Docket No. 108108.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

RYAN T. SIMMONS *et al.*, Appellees, v. JOHN D. HOMATAS *et al.* (On Stage Productions, Inc., Appellant).

*Opinion filed March 18, 2010.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, and Karmeier concurred in the judgment and opinion.

Justice Freeman concurred in part and dissented in part, with opinion, joined by Justice Burke.

**OPINION**

The separate plaintiffs in this case are special administrators of the estates of the decedents, who were fatally injured in an automobile collision. Plaintiffs allege that defendant, On Stage Productions, Inc., operator of a strip club, negligently encouraged a patron to consume alcoholic beverages until he became intoxicated and then required him to drive off the premises, which resulted in the collision that killed plaintiffs' decedents. Defendant On Stage filed a motion to dismiss all claims, which was denied by the circuit court of Kane County. The circuit court did, however, certify two questions for interlocutory appeal. The court sought guidance as to whether

defendant owed a duty of care to each plaintiff. The appellate court answered both questions in the affirmative. 386 Ill. App. 3d 998. Defendant On Stage then appealed to this court. We are asked now to determine whether On Stage owed a duty to the decedents based on its actions the night of the collision.

## BACKGROUND

No factual findings have been made in the circuit court in this case, as it arises from questions certified on denial of a motion to dismiss. Therefore, the following summary of facts is drawn from the allegations contained within plaintiffs' complaints.

Around 9 p.m. on January 4, 2006, John Homatas and John Chiariello arrived at Diamonds Gentlemens Club (Diamonds or the club), which is operated by defendant On Stage Productions, Inc. On Stage operates Diamonds as a fully nude strip club. The club is located in Du Page County, which prohibits clubs featuring nude dancing from receiving a license to serve alcohol. As a result, Diamonds does not serve alcohol to its patrons. However, it does allow patrons to bring their own alcohol. Diamonds also sells glasses, ice, soft drinks and other mixers for making alcoholic drinks.

When Homatas and Chiariello arrived at the club, Homatas had been driving. Homatas left his vehicle with the club's valet service, as the club requires. Homatas and Chiariello then went inside. The two men had brought with them a fifth of rum and a fifth of vodka. Over the course of the next two hours, the two men poured several drinks. They purchased mixers, glasses and ice from the club. Homatas became visibly intoxicated and around 11 p.m. was found by Diamonds' employees to be vomiting in the restroom. The employees immediately ejected Homatas and Chiariello from the club. They also instructed the valet service to start Homatas's car and bring it to the front door. When the car arrived, employees opened the driver-side front door and directed Homatas to leave the premises.

Approximately 15 minutes later, Homatas collided with a vehicle driven by April Simmons. The collision resulted in the deaths of Chiariello, Simmons, and Simmons' unborn daughter, Addison Elizabeth Simmons. Homatas was injured, but has since recovered from those injuries.

Representatives of the decedents' estates then brought suit, alleging both common law negligence and liability under the Dramshop Act (235 ILCS 5/6–21 (West 2008)). Chiariello's estate is represented by his father, plaintiff Gaetano Chiariello. April's and Addison's estates are represented by April's husband and Addison's father, plaintiff Ryan Simmons.

The Simmons complaint contains six counts. Counts I through IV allege statutory liability under the Dramshop Act for property damage and loss of society for each of Simmons's decedents. Counts IV and V allege common law claims for wrongful death of April and Addison. The Chiariello complaint contains two counts. It alleges common law wrongful death in count I and alleges a statutory Dramshop Act claim for property damage and loss of society in count II.

On Stage moved to dismiss under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2008)), asserting that both plaintiffs' complaints fail to state a cause of action upon which relief can be granted. First, On Stage argued that the Dramshop Act is the sole remedy for actions involving liability from alcohol-related injuries, thereby precluding plaintiffs' common law claims. Second, On Stage argued that because the Dramshop Act applies only to businesses engaged in the sale or gift of alcohol, the Dramshop Act does not extend liability to On Stage as a result of its policy of not selling or serving alcohol to its patrons.

The circuit court granted, in part, On Stage's motion to dismiss. The court concluded that the Dramshop Act did not apply to the club because it did not sell or give alcohol to its patrons. It also recognized that there is no common law cause of action against a provider of alcoholic beverages for injuries arising out of the sale or gift of such beverages. However, the court allowed plaintiffs' remaining common law counts to proceed after considering whether On Stage nonetheless otherwise owed a duty to plaintiffs. Regarding the Chiariello plaintiff, the court found that a duty existed as a result of a business invitor-invitee relationship between On Stage and Chiariello. Regarding the Simmons plaintiff, the court concluded that although there was no special relationship between Homatas and Simmons, a duty may exist when the defendant's affirmative conduct creates or contributes to the risk of harm. After considering the foreseeability and likelihood of

injury, and the magnitude and consequences of imposing a burden guarding against the risk, the circuit court concluded that On Stage also owed a duty to Simmons.

As part of its order denying On Stage's motion to dismiss plaintiffs' common law claims, the circuit court identified this issue as a question of law suitable for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308(a)). After receiving suggested questions of law from the parties, the circuit court entered an order certifying two questions. First, as to Chiariello:

"Whether the defendant, Diamonds, a business operator who is not subject to the *Dram Shop Act* [*sic*] (because it does not sell or serve alcoholic beverages upon its premises), owed a duty of unreasonable risk of harm to a business invitee Chiariello, who shortly after leaving the defendant's place of business, was killed in a motor vehicle accident on a public highway, due to the negligent operation of a motor vehicle, driven by Homatas, who within a short period of time prior to the aforesaid motor vehicle collision, was also an invitee of defendant's place of business under the following circumstances:

• where defendant's valet service took control of Homatas's vehicle upon his entering defendant's place of business;

• where defendant as part of its business plan encouraged its invitee Homatas to bring and consume alcoholic beverages to and beyond the point of intoxication upon its premises;

• thereafter removed its invitee Homatas from its premises due to his intoxication;

• ordered and assisted the invitee Homatas into the driver seat of his vehicle;

• ordered invitee Chiariello off the premises and into the intoxicated Homatas's vehicle;

• allowed said intoxicated invitee Homatas to drive the vehicle away from the premises and onto the public highway;

-4-

• where defendant was aware that its business invitee Chiariello was a passenger in said vehicle and the driver invitee Homatas had a level of intoxication which was obvious enough that a reasonable person would have determined that he was unable to operate a motor vehicle[.]"

Then, as to Simmons:

"Whether the defendant, Diamonds, a business operator who is not subject to the *Dram Shop Act* [*sic*] (because it does not sell or serve alcoholic beverages upon its premises), has a duty of ordinary care to the Simmons Plaintiffs, who while motoring on a public highway, were killed due to the negligent operation of a motor vehicle driven by Homatas, who within a short period of time prior to the aforesaid motor vehicle collision, was an invitee of defendant's place of business under the following circumstances:

• where defendant's valet service took control of Homatas's vehicle upon his entering defendant's place of business;

• encouraged its invitee Homatas to bring alcoholic beverages onto its premises in order consume to the point of intoxication;

• thereafter removed its invitee Homatas from the premises because of his intoxication;

• ordered and assisted the invitee Homatas into the driver seat of his vehicle;

• then after controlling its invitee's automobile while he was on its premises, relinquished said automobile into the hands of its invitee Homatas

• while defendant knew or should have known that due to Homatas's intoxication he was unable to operate a motor vehicle;

• then allowed said Homatas to drive the vehicle away from the premises onto the public highway[.]"

On Stage appealed the order certifying the above questions. The appellate court allowed the appeal. In reviewing the case, the court

asked the parties to file supplemental briefs on whether section 876 of the Restatement (Second) of Torts provides a basis upon which it could find a duty existed. Section 876 addresses the liability of a defendant for harm resulting to a third person from the tortious conduct of another. In its published decision, the court concluded that section 876 does provide the basis of a duty On Stage owed to both plaintiffs. Thus, the court answered both certified questions in the affirmative and remanded for further proceedings.

On Stage petitioned for leave to appeal the appellate court's decision, which we allowed pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315). For the reasons that follow, we hold that On Stage owed a duty of care to both plaintiffs, answer both certified questions in the affirmative, and remand the cause for further proceedings.

ANALYSIS

Our review of the appellate court's ruling on certified questions is governed by Rule 308. Certified questions, by definition, are questions of law that we review *de novo.* We generally limit our review to the certified questions, but in the interests of judicial economy and the need to reach an equitable result we may also consider the propriety of the circuit court order giving rise to these proceedings. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 354 (2007).

In answering the certified questions, we first note, as did the appellate court, that the questions differ slightly as to their wording. Both wordings, however, reflect the same concern with determining whether On Stage owed a duty to each plaintiff. Therefore, we will consider both of these similar questions together, conducting a single analysis.

On Stage first contends that the legislature has preempted all alcohol-related liability with passage of the Dramshop Act. On Stage relies primarily on *Charles v. Seigfried*, 165 Ill. 2d 482 (1995), to argue that the Dramshop Act altered the common law rule that no liability existed on the part of a seller of alcohol, but that it extended liability only to those licensed by the state to sell alcohol, and precluded liability for all other alcohol-related injuries. On Stage also

cites cases discussed in *Charles* and those which in turn have since followed *Charles*. Therefore, we next summarize this body of case law.

*Charles* was not the first case in Illinois to consider whether a common law action exists in addition to liability under the Dramshop Act, or in cases where the Dramshop Act does not apply. However, *Charles* explained in detail the history of liability associated with furnishing alcoholic beverages. As On Stage notes, this history began with the court recognizing that there is no common law cause of action for injuries arising out of the sale or gift of alcoholic beverages. *Charles*, 165 Ill. 2d at 486. The basis for this common law rule is that the drinking of an intoxicant is the proximate cause of such injuries, and the furnishing of the beverage is too remote to be considered the proximate cause of any injuries. *Charles*, 165 Ill. 2d at 486.

In 1872, the legislature changed this rule, to a limited extent, with passage of legislation that is now referred to as the Dramshop Act. At that time, following the Civil War, the temperance movement took advantage of what this court called a "great wave" of reform, and sought to enact laws that would " 'provide against the evils resulting from the sale of intoxicating liquors in the State of Illinois.' " *Cunningham v. Brown*, 22 Ill. 2d 23, 27 (1961), quoting 4 E. Bogart & C. Thompson, A Centennial History of Illinois 42-44 (1920). The Dramshop Act extended liability to persons who sold or gave alcohol to persons who later injured third parties as a result of being intoxicated. *Charles*, 165 Ill. 2d at 487.

In 1889, this court clarified that the Dramshop Act created a cause of action only against those engaged in the liquor trade. *Cruse v. Aden*, 127 Ill. 231, 239 (1889). The legislature did not intend to extend liability to a social host "who, in his own house, or elsewhere, gives a glass of intoxicating liquor to a friend as a mere act of courtesy and politeness." *Cruse*, 127 Ill. at 239. The court again emphasized that under the common law rule, no liability attached to one who furnished alcohol to another person. *Cruse*, 127 Ill. at 234.

More recently, this court reaffirmed that the Dramshop Act is the exclusive remedy for holding providers of alcohol liable for the actions of an intoxicated person. In *Cunningham v. Brown*, 22 Ill. 2d 23 (1961), a wife sued tavern operators for providing alcohol to her

husband, who become intoxicated and despondent, and took his own life. The wife sought a remedy under what was then section 12 of the Dramshop Act, which did not provide an express remedy. She also sought to recover under a common law theory of liability.

The court concluded that neither cause of action was appropriate. A particular remedy was provided elsewhere within the statute. The plaintiff's interests were intended to be protected by that remedy alone. *Cunningham*, 22 Ill. 2d at 29. Thus, no common law remedy, and no independent statutory remedy, was available to the wife as against the tavern operator who had provided alcohol to her husband. *Cunningham*, 22 Ill. 2d at 30-31.

Since *Cunningham*, this court has repeatedly reaffirmed these conclusions. Thus, it is well established that under the common law, no liability is imposed on a person who gives or sells alcohol to another person who later harms a third party while intoxicated. *Hopkins v. Powers*, 113 Ill. 2d 206, 211 (1986); *Demchuk v. Duplancich*, 92 Ill. 2d 1, 5 (1982); *Knierim v. Izzo*, 22 Ill. 2d 73, 77 (1961). It is also established that the Dramshop Act imposes liability only on those persons officially engaged in the business of selling liquor in the State of Illinois. *Wakulich v. Mraz*, 203 Ill. 2d 223, 237 (2003) (rejecting social host liability); *Charles*, 165 Ill. 2d at 491 (same). Under these long-standing principles it is evident that On Stage is not subject to liability under the Dramshop Act. On Stage neither is in the business of selling liquor in Illinois nor is it providing alcohol as a "social host." Although the club provided glasses, ice and mixers to its patrons, the club did not provide alcohol to either Homatas or Chiariello. The circuit court was, therefore, correct in concluding that the Dramshop Act does not apply.

On Stage's primary argument, however, is that the Dramshop Act further acts to preempt any other liability resulting from Homatas's intoxication. On Stage relies on a statement in *Charles* that the rule in Illinois is "firmly established" that the General Assembly "has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act." *Charles*, 165 Ill. 2d at 491. For the reasons below, however, we conclude that reliance on this statement is misplaced. Although this statement from *Charles* applies broadly to those who provide alcohol to another

person, it does not extend so far as to preempt a common law cause of action under the circumstances posited by the certified questions.

The body of law cited by On Stage and discussed above primarily focuses on the liability of those persons providing alcohol to a patron or guest who ultimately cause injuries to a third party. Both *Cruse* and *Charles* asked whether social hosts were subject to liability under the Act. In *Cunningham* the defendants were tavern operators. These cases demonstrate that the Dramshop Act provides a framework for determining whether a provider of alcohol will be exposed to liability. If the provider is a business that sells alcohol, liability may attach, but only under the Dramshop Act, not under the common law. If the provider is merely a social host, liability will not attach, either under the statute or under the common law. What the above cases do not discuss is liability for injuries that arise not as a result of the provision of alcohol, but as a result of the encouragement of, or assistance in, tortious conduct.

The preemption stated in *Charles* was limited in exactly this way. In that case, this court concluded "few rules of law are as clear as that no liability for *the sale or gift of alcoholic beverages* exists in Illinois outside of the Dramshop Act." (Emphasis added.) Although the *Charles* court used the phrases "alcohol-related liability" (*Charles*, 165 Ill. 2d at 490) and "alcohol-induced injuries" (*Charles*, 165 Ill. 2d at 489), the court's analysis addressed only claims arising from the defendant's provision of alcohol. The court did not need to consider whether actions of the defendant, independent of providing alcohol, led to the third party's injuries. This distinction is relevant to the present case.

We have previously recognized this distinction in the more recent case of *Wakulich v. Mraz*, 203 Ill. 2d 223 (2003). In that case, the plaintiff alleged that a pair of brothers, social hosts, provided alcohol to the plaintiff's minor daughter. The daughter became intoxicated as a result and became unconscious. She began "vomiting profusely and making gurgling sounds." *Wakulich*, 203 Ill. 2d at 227. The hosts removed her soiled blouse and provided a pillow under her head to prevent aspiration, but did not drive her home or contact her parents, and prevented others at the home from calling 911 or seeking medical

attention. The daughter died the following day, after the brothers' father allegedly ordered them to remove her from the house.[1]

The *Wakulich* plaintiff sued the brothers, alleging they were negligent in providing alcohol to her daughter and negligent in failing to act reasonably to protect her after voluntarily undertaking to care for her after she became unconscious. *Wakulich*, 203 Ill. 2d at 227. In affirming the dismissal of the negligence claim relating to the brothers' providing alcohol to the daughter, we reiterated that Illinois law does not recognize social host liability for the provision of alcohol, citing *Charles*.[2] Regarding the plaintiff's voluntary undertaking claim, however, we agreed with the appellate court that this claim should not have been dismissed. *Wakulich*, 203 Ill. 2d at 246-47. We reasoned that the fact the brothers served as social hosts was irrelevant to this claim. Instead, the brothers' liability arose "by virtue of their voluntary assumption of a duty to care *** irrespective of the circumstances leading up to that point." *Wakulich*, 203 Ill. 2d at 242.

The appellate court has also recognized situations where liability arose not from the provision of alcohol to a patron, but from the actions of the defendant tavern after the patron had become intoxicated. A cocktail lounge owner was held responsible for failing to protect a patron from an attack by another intoxicated, belligerent patron. *Lessner v. Hurtt*, 55 Ill. App. 3d 195, 197 (1977). The court recognized the rule in *Cunningham* barring liability for the sale or gift of alcohol, but concluded that the lounge owner still owed a duty to protect its patrons while on the premises. *Lessner* was subsequently

---

[1]Although this court's opinion in *Wakulich* does not provide details as to the events following the daughter's removal from the house, the appellate court noted that she was taken first to a friend's house, and later to the hospital, where she was pronounced dead. *Wakulich v. Mraz*, 322 Ill. App. 3d 768, 770 (2001).

[2]Following this court's decision in *Wakulich*, the General Assembly enacted legislation that created a cause of action based on the liability of persons, including social hosts, who provide alcohol to, and cause the intoxication of, a person under 18 years of age. 740 ILCS 58/5 (West 2008).

cited in *Harris v. Gower, Inc.*, 153 Ill. App. 3d 1035, 1037 (1987). In *Harris*, a bar patron became intoxicated, and subsequently became unconscious, after being served several drinks. Bar employees then removed the patron from the bar and placed him in his vehicle. Overnight the patron froze to death. The court concluded that allegations that the bar served the decedent alcohol were significant only insofar as to how he became unconscious. Again, liability arose not from providing alcohol, but from the bar employees' negligence in placing the decedent in peril. *Harris*, 153 Ill. App. 3d at 1038. Both of these cases involved an "alcohol-related injury," yet each held a cause of action existed based on negligence unrelated to serving alcohol.

On Stage argues that the appellate court later recognized *Harris* as being based on premises liability and that it later distinguished *Harris* in *Holtz v. Amax Zinc Co.*, 165 Ill. App. 3d 578 (1988). The court's distinguishing of *Harris*, however, only emphasizes the difference between the mere furnishing of alcohol to a person and conduct that arises to negligence independent of providing alcohol. In *Holtz*, an employee became intoxicated at a company picnic and later drove away, which resulted in severe injuries to the plaintiff. *Holtz*, 165 Ill. App. 3d at 579-80. The plaintiff argued that the employer was negligent in permitting the employee to leave, knowing that the employee was intoxicated. The court held that an employer cannot be liable "where its agents have simply failed to take steps to prevent an intoxicated employee from driving home." *Holtz*, 165 Ill. App. 3d at 583.

As On Stage notes, the court distinguished *Harris* as based on premises liability. However, just as the voluntary undertaking doctrine allowed recovery in *Wakulich* and the duty of a tavern to protect its patrons from violence allowed recovery in *Lessner*, premises liability in *Harris* was merely one vehicle through which negligent conduct independent of serving alcohol could be properly pled. Thus, in *Holtz*, the employer was not liable, as there was no further conduct, beyond serving alcohol, that exposed the employer to liability. The court in *Holtz* properly held that merely permitting an intoxicated employee to leave does not create liability.

Similarly, On Stage's duty does not arise from providing alcohol to Homatas. Indeed, the parties agree that the club did not provide any

alcohol at all. Rather, a duty under the facts alleged arose later, following a series of actions taken by club employees in response to discovering Homatas vomiting in the club's restroom At that point, employees allegedly ejected Homatas and Chiariello from the club, ordered the parking attendant to bring Homatas's car around to the front door, and assisted Homatas and Chiariello into the vehicle, directing him then to leave the premises.

On Stage also relies, in part, on *Wienke v. Champaign County Grain Ass'n*, 113 Ill. App. 3d 1005 (1983), to contend that helping Homatas to his vehicle does not trigger liability. In *Wienke*, the plaintiffs' decedents were injured when an intoxicated employee of the defendant, while driving, collided with the decedents' vehicle. *Wienke*, 113 Ill. App. 3d at 1005-06. Prior to the collision, the employee had been attending an event sponsored by the defendant, at which he was served alcohol. The employee left the event with two coworkers. The coworkers drove the employee to his vehicle, which was parked approximately four miles from the event. At that time, the intoxicated employee entered his vehicle and drove away, later causing the collision. *Wienke*, 113 Ill. App. 3d at 1006.

The court first rejected a theory of liability based on the defendant having furnished alcohol to its employee, consistent with both its own precedent and this court's holding in *Cunningham*. *Wienke*, 113 Ill. App. 3d at 1009. The court also considered whether having coworkers drive the employee to his car, knowing he was intoxicated, could trigger liability for the employer. In so doing, the court cited *Gustafson v. Mathews*, 109 Ill. App. 3d 884 (1982). In that case, an intoxicated patron was assisted by bar employees out to the parking lot to his van, where his five children had been waiting. The patron drove away and later collided with a truck, killing the patron and four of the children. *Gustafson*, 109 Ill. App. 3d at 885, 886. The *Gustafson* court held that common law imposed no duty on the bar owners, suggesting that to do so would require imposing the same duty to all owners of parking lots, and would require them to "evaluate the behavior of their customers to determine whether they have the capacity to drive safely." *Gustafson*, 109 Ill. App. 3d at 887. The *Wienke* court echoed this statement, indicating that finding liability would "impose a heavy burden upon those *** who aid

-12-

others who may be intoxicated in getting to their automobiles." *Wienke*, 113 Ill. App. 3d at 1010.

*Gustafson* and *Wienke*, according to On Stage, represent courts' efforts to prevent open-ended liability for dram shops, restaurants, parking lot owners and others that may be put in a position of helping a patron to his or her vehicle. On Stage argues that allowing recovery in this case would open such a "Pandora's box." We disagree.

Of concern to the courts in *Wienke* and *Gustafson* was whether persons should be given the burden of determining whether a person was intoxicated and whether that person would drive safely or recklessly. However, our decision in this case does not implicate those concerns. On Stage took on the burden of determining whether Homatas was dangerously intoxicated when club employees discovered him vomiting in the restroom, a likely result of his intoxication. On Stage, on its own initiative, made this determination and expelled Homatas from the club. In doing so, On Stage acquired a duty not to encourage and assist Homatas in the tortious conduct of driving while intoxicated. On Stage, in effect, argues both that it should not be required to determine whether a patron is intoxicated and that it cannot be not responsible when it nonetheless voluntarily chooses to make that determination and then facilitates that patron's tortious conduct. Such an argument is untenable. We conclude that the Dramshop Act does not preempt plaintiffs' common law claims in this case, and does not preclude imposing a duty of care on On Stage.

In addition to preemption, On Stage also argues that to impose a duty in this case requires that there be a special relationship between On Stage and the decedents. On Stage cites several cases requiring a special relationship before a defendant may be held liable for the criminal acts of a third party. However, its reliance on these cases is misplaced.

On Stage is correct that a special relationship is required in order to impose a duty on the defendant to protect others from the criminal acts of a third party. *Iseberg v. Gross*, 227 Ill. 2d 78, 87 (2007); Restatement (Second) of Torts §§314, 314A (1965) (concerning a duty to act for the protection of others, and requiring a special relationship for such duty to arise). This is true because a private person generally has no affirmative duty to control the conduct of

-13-

another to prevent such an act. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228 (2000). However, this case does not raise a question as to whether On Stage had a duty to control Homatas's conduct. Indeed, had Homatas left on his own, and On Stage was alleged to have merely failed to prevent him from leaving the club and driving away intoxicated, sections 314 and 314A of the Restatement may have applied. Under those circumstances, no duty would have arisen absent a special relationship. As discussed above, however, this case implicates a different section of the Restatement. Section 876 imposes liability on those persons who act in concert with another tortfeasor, giving substantial assistance or encouragement to another's tortious conduct. Restatement (Second) of Torts §876 (1979) (describing in-concert liability).

These sections of the Restatement are not inconsistent. Although one does not have a duty to prevent the criminal acts of a third party, one does have a duty to refrain from assisting and encouraging such tortious conduct. If a plaintiff can demonstrate that the defendant did not merely fail to act, but also assisted the third party, then the requirement of a special relationship no longer applies. Although On Stage argues that *Elizondo v. Ramirez*, 324 Ill. App. 3d 67 (2001), involved similar facts to the instant case, that case instead serves as an example of how the two Restatement sections differ.

In *Elizondo*, the parents of a 15-year-old girl allowed the girl to have a party at which she provided alcohol to her underage friends. At that party, the plaintiff's decedent was killed in a fight with another of the party's guests who was a member of a rival gang. The plaintiffs argued that no special relationship was needed to impose a duty on the girl's parents. The court disagreed, however, reaffirming that a special relationship is required in such situations. These facts are not analogous to those presented this case. The parents in no way assisted or encouraged the actions of the fighting party guests. They did not provide a weapon or instigate the disagreement. In *Elizondo*, the parents merely failed to prevent the fight. In this case, the appellate court discerned that plaintiffs' complaint raised a question under section 876, in that plaintiffs alleged not that On Stage merely failed to act, but that it affirmatively assisted Homatas in driving while intoxicated. Under such circumstances, plaintiffs need not establish a special relationship.

-14-

Under the circumstance described by the circuit court, the Dramshop Act does not preempt a claim under section 876 of the Restatement. Nor does section 876 require plaintiffs to prove a special relationship between the defendant and the decedents. Therefore, we conclude that On Stage owed a duty to both plaintiffs' decedents, and answer the certified questions in the affirmative.

On Stage argues, in the alternative, that even if the Dramshop Act does not preempt a cause of action under section 876, and On Stage did indeed owe a duty to the decedents, the plaintiffs have not alleged facts sufficient to state a cause of action under that section. Thus, according to On Stage, the circuit court nonetheless erred in denying its motion to dismiss plaintiffs' common law claims. A grant or denial of a motion to dismiss is a question of law that we review *de novo*. *Wakulich*, 203 Ill. 2d at 228.

The comment to subsection (b) of section 876 lists five factors to be considered in determining whether in-concert liability will attach. These factors are (1) the nature of the act encouraged, (2) the amount of assistance given by the defendant, (3) his presence or absence at the time of the tort, (4) his relation to the other and (5) his state of mind. On Stage argues that plaintiffs' complaints are not premised on these factors, and the facts relied upon by the appellate court do not state a cause of action based on these factors.

The question of whether a defendant has substantially assisted or encouraged another person in his tortious conduct based on the above factors is a question for the jury. *Sanke v. Bechina*, 216 Ill. App. 3d 962, 971-72 (1991). On Stage contends that the complaint fails, on its face, to allege the necessary facts. An examination of plaintiffs' complaint does not support On Stage's argument.

To state a cause of action under section 876, plaintiffs must demonstrate that On Stage knew Homatas's conduct constituted a breach of duty and that On Stage gave substantial assistance or encouragement to Homatas in committing that breach of duty. The comments to that section further note that "[a]dvice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance." Restatement (Second) of Torts §876, Comment *d*, at 317 (1979).

-15-

In the Simmons complaint, Simmons alleged in both of his common law counts that On Stage knew or should have known that Homatas was intoxicated and was leaving the premises by driving a vehicle in that state. Simmons also alleged that On Stage "removed" Homatas from the club, and "negligently and carelessly directed John D. Homatas *** to leave the premises of the club."

Similarly, the Chiariello plaintiff alleges that Homatas became visibly intoxicated at the club, after purchasing mixers and glasses from On Stage employees. The complaint alleges that On Stage employees sometime later then discovered Homatas vomiting in the bathroom and ejected him from the club. Chiariello further alleges that employees directed the valet service to bring Homatas's car, opened the door for him when it arrived, and directed Homatas to drive away from the premises.

The above facts, as alleged, are sufficient to state a cause of action for common law negligence under section 876. In this case, a reasonable jury could find that On Stage knew that the act of driving while intoxicated is tortious conduct and constitutes a breach of duty toward others traveling on the public highways. Further, from the face of the complaints, plaintiffs allege On Stage knew Homatas was intoxicated, and clearly knew he was driving from the premises. A reasonable jury could also conclude that ejecting Homatas from the club, having the parking valet bring Homatas's car to the front of the club, and assisting him into his vehicle and directing him to drive off constitutes substantial assistance from, or encouragement by, On Stage toward Homatas in his tortious conduct.

On Stage argues, however, that plaintiffs' complaints allege nothing about On Stage encouraging Homatas to speed, drive on the wrong side of the road or otherwise drive erratically once Homatas had left the club. Plaintiffs respond that On Stage need not have been present at the time of the collision in order for liability to attach to its conduct. We agree with plaintiffs.

A case upon which On Stage relies is *Wolf v. Liberis*, 153 Ill. App. 3d 488 (1987). In *Wolf,* the defendant had a fight with her fiance while having dinner at a restaurant. During the dinner the defendant had several glasses of wine. The two went home separately. Later, the defendant, intoxicated, drove to her fiance's apartment. After resolving their dispute, the defendant's fiance offered to follow her

-16-

as she drove home. During the drive the defendant crashed her vehicle into a store window. The fiance backed the car out of the store. He told the defendant to stay there as he went to call the police.

The defendant, however, chose to leave the scene. After she left, her fiance became involved in a struggle with several assailants. In his efforts to get away, he lost control of his car, striking the vehicle being operated by the plaintiff's decedent. The plaintiff sought to recover from the defendant on a theory of in-concert liability, alleging she had assisted and encouraged her fiance's tortious conduct.

We find *Wolf* to be inapposite. The appellate court in *Wolf* concluded that because defendant had already driven away by the time of the accident, she could not have assisted or encouraged his conduct. The defendant did not suggest or require her fiance to do anything that would have caused him to act negligently. She left the scene before she could have induced her fiance to drive in a particular manner. *Wolf* does not stand for the proposition that a defendant must be present in order to encourage tortious conduct. Rather, *Wolf* is merely an example, under particular circumstances, of actions that do not rise to assistance and encouragement.

In *Wolf*, the defendant made no suggestions as to what her fiance should do in response to his being assaulted or required him to take any action. Here, On Stage is alleged to have required Homatas to leave the club, placed him into his vehicle, and required him to leave its premises. Under the plaintiff's theory, On Stage provided only one option for Homatas to leave its premises. That option was to leave, by car, even though it had determined that Homatas was intoxicated.

On Stage also cites *Fugate v. Galvin*, 84 Ill. App. 3d 573 (1980), which upheld the general rule that passengers of a car are not responsible for damages caused by the driver, unless the passenger is the owner of the car, or otherwise has a right to control the vehicle. *Fugate*, 84 Ill. App. 3d at 575. In that case, the passenger asked his intoxicated friend to drive him to another friend's house. The appellate court rejected the argument that the passenger was liable for putting the driver "in motion." *Fugate*, 84 Ill. App. 3d at 574. In the appellate court's view, "[t]he decision to take to the road in an intoxicated condition remained the driver's alone." *Fugate*, 84 Ill. App. 3d at 576.

*Fugate* is also readily distinguished. The context of a friend simply asking another friend for a ride home is significantly different from what plaintiffs allege in this case. Here, Homatas's choices of action were limited by his having club employees bring him his car, opening his door, placing him inside and requiring him to leave the premises. The facts, as alleged by plaintiffs, do not suggest that On Stage was making a request of Homatas. Instead they suggest that On Stage left Homatas little choice but to drive his vehicle off the club's property and onto the public highways.

As the circuit court recognized, this case presents a set of special circumstances. We do not hold today that restaurants, parking lot attendants or social hosts are required to monitor their patrons and guests to determine whether they are intoxicated. We hold only that where, as here, a defendant is alleged to have removed a patron for being intoxicated, places the patron into a vehicle and requires him to drive off, such facts are sufficient to state a common law negligence cause of action that is not preempted by the Dramshop Act.

CONCLUSION

We answer both certified questions in the affirmative, and remand this cause to the circuit court for further proceedings consistent with this opinion.

*Certified questions answered;*
*cause remanded.*

JUSTICE FREEMAN, concurring in part and dissenting in part:

I agree that the circuit court correctly dismissed plaintiffs' Dramshop Act claims. Slip op. at 13. The more difficult question is whether plaintiffs have adequately pled common law claims for in-concert liability. It was this issue that prompted the certified questions and the appellate court's request for additional briefing on section 876 of the Restatement (Second) of Torts. I do not agree that plaintiffs'

complaints, as currently pled, adequately state a cause of action based upon section 876.

Section 876 of the Restatement (Second) of Torts sets forth three situations of "in-concert" liability. Relevant here, section 876 provides:

> "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> ***
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ***." Restatement (Second) of Torts §876(b), at 315 (1979).

Comment *d* to section 876 further explains:

> "Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act." Restatement (Second) of Torts §876, Comment *d*, at 317 (1979).

This comment also stresses, however, that liability does not easily attach, cautioning that "[t]he assistance of or participation by the defendant may be so slight that he is not liable for the act of the other." Restatement (Second) of Torts §876, Comment *d*, at 317 (1979). In determining whether the "substantial assistance or encouragement" required for imposition of in-concert liability exists, the comment instructs that the following five factors are to be considered:

> "[1] the nature of the act encouraged, [2] the amount of assistance given by the defendant, [3] his presence or absence at the time of the tort, [4] his relation to the other and [5] his state of mind ***." Restatement (Second) of Torts §876, Comment *d*, at 317 (1979).

This court has not addressed the question of what must be pled to establish in-concert liability, but our appellate court has. Appellate

decisions establish that a person is liable under this provision when two elements are met: (1) he knows that the other person's conduct is tortious; and (2) he "gives substantial assistance or encouragement" to that person to engage in tortious conduct. See, *e.g.*, *Kohn v. Laidlaw Transit, Inc.*, 347 Ill. App. 3d 746, 758-59 (2004), quoting Restatement (Second) of Torts §876(b), at 315 (1979); *Fortae v. Holland*, 334 Ill. App. 3d 705, 716-17 (2002); *Sanke v. Bechina*, 216 Ill. App. 3d 962, 964 (1991).

The appellate court has also quoted from comment *d* of section 876 to underscore that the five factors make up the element of "substantial assistance or encouragement," and that for in-concert liability to attach, heightened culpability is required to the extent that a defendant's conduct must be "more than benign." *Sanke*, 216 Ill. App. 3d at 971; see also *Kohn*, 347 Ill. App. 3d at 759 (the Restatement makes a distinction "in assessing the quality of a defendant's conduct before subjecting the actor to liability, *i.e.*, it is not enough that a defendant assist or encourage another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial, not merely slight"); *Fortae*, 334 Ill. App. 3d at 719-20 (an analysis of in-concert liability "calls for us to look at the language in the commentary [to] subsection (b) *** to determine if [defendant's] participation was so slight that one defendant was to not be liable for the act of the other").

Under this authority, there might indeed be a basis for in-concert liability in this case. But that would require allegations that Homatas was intoxicated to the point of rendering him incapable of safely operating a motor vehicle, that this impairment was obvious to defendant's employees and they were aware of it, and, despite this knowledge, the employees placed him behind the wheel of a running motor vehicle and sent him off, the equivalent of a ticking time bomb. Such conduct might constitute the "moral support to a tortfeasor" referenced in comment *d*, and as illustrated by its accompanying five factors, as well as the "substantial assistance" contemplated by the Restatement.

The allegations of the complaints here, however, do not come close to that. It is enough for the majority that the complaints allege that defendant knew that Homatas was drunk, knew that drunk driving is tortious conduct, and knew that he would drive away from

defendant's premises. Slip op. at 16. The element of knowledge, however, is only one element to be pled and proven under section 876, and it is *not* the same as "substantial assistance." As one legal commentator has recognized:

> "There are *** occasional statements that mere knowledge by each party of what the other is doing is sufficient 'concert' to make each liable for the acts of the other, but this seems clearly wrong. Such knowledge may very well be important evidence that a tacit understanding exists; but since there is ordinarily no duty to take affirmative steps to interfere, the mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility." W. Prosser, Torts §46, at 292 (4th ed. 1971).

In other words, the element of "substantial assistance or encouragement" is not satisfied by allegations that a defendant failed to prevent another's tortious conduct. Plaintiffs' complaints are deficient in pleading the "substantial assistance or encouragement" element as required by our fact-pleading standards. *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 509-10 (1988).

Of the two complaints, Chiariello's comes nearer to establishing the basis for in-concert liability. A close look at what is actually alleged shows the error in the majority's conclusion. According to the complaint, once Homatas arrived at the club, his car was "met by a valet, Homatas paid a valet fee, and [his] car was then driven away." During the two hours Homatas was at the club, he "became visibly intoxicated, but employees of [the club] continued to encourage [him] to pour himself drinks and to that end provided him with additional mixers and ice." At 11 p.m., Homatas, "exhibiting obvious symptoms of extreme intoxication, and perhaps, acute alcohol poisoning, began vomiting in [the club's] bathroom." At that time, it is alleged that club employees "discovered that Homatas was vomiting in the bathroom and immediately ejected both Homatas and Chiariello from the establishment."

The allegations that Homatas was visibly intoxicated and "perhaps" exhibited alcohol poisoning are conclusory. No facts are alleged to support the conclusion of intoxication, *i.e.*, slurred speech,

compromised motor skills, *etc.*[3] Exactly how the conclusion of acute alcohol poisoning is supported is anyone's guess. Parenthetically, the vomiting that the majority relies on as an indication of possible intoxication may have nothing to do with the ability to safely operate a motor vehicle.

The element of "substantial assistance" being central to in-concert liability, the allegations concerning what club employees did with respect to the car deserve even more careful consideration. Chiariello's complaint alleges that some 10 minutes after Homatas was found ill in the bathroom, club employees "ordered the valet service to start Homatas's car and bring it to the front door of the club." Its employees "then opened the driver's door of the car and directed Homatas and Chiariello to immediately drive away from the premises." "Directed" merely suggests that Homatas was told to leave. This cannot be a basis of liability under section 876.

The Simmons complaint is even less factually specific. It alleges that club employees knew or should have known that Homatas "became intoxicated as a result of his consumption of alcoholic beverages" in the club. The complaint further alleges that "[d]espite their knowledge *** [employees] negligently and carelessly directed *** Homatas, while he was in an intoxicated condition, to leave the premises." Again, the words "intoxication," "intoxicated condition," and "directed" are conclusions that, alone, are insufficient as a basis for in-concert liability. Other allegations even undermine the notion of potential liability. For example, the complaint states that defendant merely "remov[ed] [Homatas] from the premises and allow[ed] him to drive [his] vehicle away from the premises." Was Homatas directed to leave or was he allowed to drive away? Neither allegation is sufficient to establish defendant's assistance or encouragement, as would be necessary for liability under section 876 to attach.

Both complaints lack the factual allegations necessary to establish "substantial assistance." Therefore, I cannot agree with the majority that they adequately plead a cause of action under section 876.

---

[3]This is particularly true here where earlier in the Chiariello complaint it is alleged that club employees were not given the proper training in identifying "the signs of intoxication."

As I earlier noted, the majority's reliance on allegations about defendants' knowledge is problematic. Beyond that, the majority takes considerable license in casting the allegations in a light to support its conclusion that the complaints, as pled, are sufficient to withstand a motion to dismiss under section 2–615. For example, with respect to the allegation that defendant's employees "opened the driver's door" for Homatas, the majority characterizes the action as the valet "assist[ed] him into his vehicle." Slip op. at 16. Neither complaint uses the verb "assisted" in its allegations. Elsewhere, the majority states that defendant is alleged to have "placed [Homatas] into his vehicle." Slip op. at 17. In its conclusion, the majority again states that it is alleged that defendant "place[d] the patron in a vehicle." Slip op. at 18. Neither complaint actually alleges this.

The majority's paraphrasing paints a picture of club employees throwing a drunken Homatas out of the club, kicking and screaming, physically placing him in his car, and commanding him to drive off into the night. That may be what happened, but the complaints do not, in fact, allege this.

Although I agree with the majority that defendant's reliance on *Wolf v. Liberis*, 153 Ill. App. 3d 488 (1987), is misplaced, another decision, *Umble v. Sandy McKie & Sons, Inc.*, 294 Ill. App. 3d 449 (1998), is helpful in analyzing this issue. There, it was alleged that employees of an automotive garage took possession of a car brought in by an intoxicated customer. The customer's condition was apparent to the employees, who repaired the car and returned it to the customer when he paid for it. The customer later collided with a car driven by the plaintiff's decedent. The plaintiff alleged that the defendant was negligent in giving car keys to an obviously intoxicated driver. *Umble*, 294 Ill. App. 3d at 451. The appellate court affirmed the dismissal of the complaint because the allegations did not "establish that defendant provided substantial assistance" to the customer. *Umble*, 294 Ill. App. 3d at 452. Specifically, the court stated that it could "not equate failing to prevent certain conduct with actively encouraging that conduct." *Umble*, 294 Ill. App. 3d at 451-52.

*Umble* underscores that a plaintiff must plead more than the fact that a defendant simply assisted or encouraged another to commit a tort under section 876. The defendant's repair and return of the customer's car–even though, according to the opinion, the defendant

-23-

knew the customer was intoxicated–did not satisfy this test. This demonstrates that defendant here needed to do more than just return the car to Homatas to constitute the substantial assistance contemplated under section 876.

As things stand, plaintiffs have not pled that defendant substantially assisted or encouraged Homatas's tortious conduct, an observation made by the appellate court in raising the issue of in-concert liability. See 386 Ill. App. 3d at 1013 (acknowledging that "plaintiffs do not appear to have strongly pressed the in-concert liability argument before the trial court"). Accordingly, it is my view that it is appropriate to remand this cause to allow plaintiffs the opportunity to do so.

JUSTICE BURKE joins in this partial concurrence and partial dissent.