RIPPLE, Circuit Judge,
dissenting.
This case requires that we undertake the familiar task of discerning the content of state law and of applying it as we believe the Supreme Court of Illinois would apply it if this case were before it today. As my colleagues correctly point out, the Supreme Court of Illinois has expanded business invitor liability over recent years. Nevertheless, we must be very careful that we do not reach beyond the boundaries currently drawn by the state court; any such expansion would require the reconciliation of important policy considerations, the prerogative of the Illinois courts. It is not our place to extend legal liability beyond the boundaries set by the state. See Todd v. Societe Bic, S.A., 21 F.3d 1402, 1412 (7th Cir.1994) (en banc).
On the facts before us, Ms. Reynolds essentially attempts to make out a ease against CB Sports grounded not in negligence but in intentional tort. I cannot accept the view that, given the facts before us, current Illinois law imposes a duty upon CB Sports to protect Ms. Reynolds from the bartender’s complicity in the criminal attack of Russell and Carson. Such a holding would expand drastically Illinois state law with respect to business invitor liability, and, therefore, exceed our *1154 interpretative authority under the Erie Doctrine.
Illinois courts have expanded liability, in some instances, for third party attacks that occurred beyond the business premises because the attacks were “reasonably foreseeable.” See Osborne v. Stages Music Hall, Inc., 312 Ill.App.3d 141, 244 Ill.Dec. 753, 726 N.E.2d 728, 733 (2000). However, a close examination of the allegations made by Ms. Reynolds reveals several key distinctions between the factual circumstances alleged in this case and those addressed in the Illinois cases relied upon by the court. The Supreme Court of Illinois has employed a “foreseeability analysis” to expand business invitor liability when the surrounding circumstances were such that the business’s employees had notice of a potential altercation and negligently facilitated the occurrence. It is one thing to suggest that “the circumstances [were] such as to put a reasonably prudent person on notice of the probability of an attack,” Shortall v. Hawkeye’s Bar & Grill, 283 Ill.App.3d 439, 219 Ill.Dec. 90, 670 N.E.2d 768, 770 (1996), and quite another to make the assertion, as Ms. Reynolds does, that an employee actually “knew” of the planned attack and took conscious steps to aid the third party in carrying out the planned attack. If we accept, as we must, the facts stated by Ms. Reynolds to be true — that the bartender indeed knew of the defendants’ plans, refused to provide her with a phone book, told her she would have to catch a ride to her hotel with someone in the bar, reassured her that she would be safe with Russell and Carson, and then continued to serve her “excessive amounts of alcohol” purchased by the defendants — the traditional foreseeability analysis of negligence law hardly seems relevant in this case. Rather, fairly read, her allegations allege an intentional tort on the part of the bartender, not the negligent performance of his duties. The authorities relied upon by the court today deal with negligence situations. The Illinois courts were addressing whether to expand business invitor liability when the facts were such that the business employees knew only that an attack could take place, and negligently did nothing to stop it. By contrast, in this case, Ms. Reynolds is asserting that the bartender knew that an attack would take place and actually cooperated with the assailants in their plot to carry out the attack. Given these factual allegations, it is difficult to understand how the bartender could be simply negligent; he knew of the defendants’ plans for Ms. Reynolds, yet discouraged other possibilities to her and even told her that these individuals were safe and served her additional drinks at the defendants’ request. I do not believe that Illinois negligence law permits the extension of business invitor liability to situations in which an employee has actual knowledge of a planned attack on a patron and takes affirmative steps to enable the plan to be executed by the third party.
The Supreme Court of Illinois’s recent decision in Simmons v. Homatas, 236 Ill.2d 459, 338 Ill.Dec. 883, 925 N.E.2d 1089 (2010), makes this distinction clear. In that case, the complaint alleged that the business establishment “knew or should have known” that one of their patrons was intoxicated and leaving the premises by driving a vehicle in that inebriated state. Id., 338 Ill.Dec. 883, 925 N.E.2d at 1101. The plaintiffs brought a claim for negligence under Restatement (Second) Torts § 876, asserting that the defendant club had given “substantial assistance or encouragement” to a patron in committing a breach of duty by driving intoxicated. Id. In Simmons, the court held the club liable for negligence, which resulted in a fatal car accident that occurred fifteen minutes after the patron left the club’s premises. *1155 Simmons, 338 Ill.Dec. 883, 925 N.E.2d at 1092. The bouncers at the bar were aware of the patron’s drastically impaired state, and facilitated his leaving the bar behind the wheel of his car. See id. The custodial nature of the bouncers’ relationship to the patron in the moments before the patron drove away from the club permitted the court to extend business invitor liability beyond the immediate vicinity of the club. Id., 338 Ill.Dec. 883, 925 N.E.2d at 1102-03.
There is a meaningful distinction between extending liability for the negligent actions of employees that facilitate the later tortious conduct of a third person and extending liability when a plaintiff alleges that the bartender knew that a third person was going to commit a tortious act, consciously cooperated by steering the plaintiff toward the third party and assisted the third party in making the plaintiff more pliable to their plans. The claim as stated by Ms. Reynolds in the first sentence of paragraph 19 makes out a claim for an intentional tort. Because CB Sports is not liable for its agents’ intentional torts, it cannot be liable for the bartender’s actions if he consciously cooperated with the plans of the defendants, as Ms. Reynolds asserts.
As my colleagues note, Ms. Reynolds’s alternate allegation that the bartender “should have known” of the defendants’ plans for Ms. Reynolds also fails under Illinois law. Foreseeability alone does not create a duty on the part of a bar to protect its patrons from the criminal attack of a third party. See Gustafson v. Mathews, 109 Ill.App.3d 884, 65 Ill.Dec. 475, 441 N.E.2d 388, 390 (1982). Also relevant is the burden on the bar in protecting against these kinds of attacks. See Osborne, 244 Ill.Dec. 753, 726 N.E.2d at 732. As the majority noted, CB Sports did not have a duty to investigate the plans or intentions of its patrons. See Op. at 1151-52. A bartender is not charged with the responsibility of knowing the motivations of everyone he serves and, given what goes on in bars today, it would impose a significant burden on these individuals and their employers to expose them to liability for not having ascertained those motivations. There are no facts in the complaint or the briefs to support Ms. Reynolds’s contention that the bartender “should have known” of the defendants’ plans based upon the defendants’ prior actions or the bartender’s knowledge of the defendants. To extend the liability of the bar to situations where the bartender “should have known” of the breach of duty of another patron would significantly extend the responsibility, and liability, of individuals in those situations. To say otherwise would create a remedy that is quite beyond where the courts of Illinois have gone.
For the reasons stated above, I respectfully dissent.