ELMER HOLTZ et al., Plaintiffs-Appellants, v. AMAX ZINC COMPANY, INC., Defendant-Appellee.

Fifth District   No. 5—87—0066

Opinion filed January 27, 1988.—Rehearing denied March 1, 1988.

Joseph Bartholomew, of Cook, Shevlin & Keefe, Ltd., of Belleville, for appellants.

Ray H. Freeark and Ransom P. Wuller, both of Freeark, Harvey, Mendillo & Dennis, of Belleville, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

This is an appeal pursuant to Supreme Court Rule 304 (107 Ill. 2d R. 304) in which plaintiffs, Elmer and Bernice Holtz, seek review of an order entered by the circuit court of St. Clair County granting summary judgment to defendant, Amax Zinc Company (Amax), on counts I, II, III, X, and XI of their fifth amended complaint. For the reasons which follow, we affirm.

Plaintiffs' claims arise from a collision which took place on September 18, 1982, between an automobile driven by John Snyder and a motor vehicle in which Elmer Holtz was riding as a passenger. At the

time of the collision, Snyder was employed by Amax and had allegedly just left a company picnic held at a local YMCA day camp where he had become intoxicated. The collision is said to have left Elmer Holtz permanently disabled and to have deprived Bernice Holtz of Elmer's "society, companionship and conjugal relations." For their respective injuries, plaintiffs each request damages in excess of $15,000.

Plaintiffs' fifth amended complaint contains 17 counts. It names as defendants not only Amax, but also Snyder himself; Dennis Hamann Sign Company and Mid-States Disposal, Inc., which erected signs near the site of the collision, allegedly obstructing drivers' ability to see approaching traffic; St. Clair County Township, which is alleged to have improperly placed a stop sign and to have "allowed the intersection to become peripheraded with signs" which similarly obstructed drivers' view of approaching traffic; and Angler's Club, a tavern which had served alcoholic beverages to Gary Purcell, the driver of the car in which Elmer Holtz was a passenger, allegedly causing Purcell to also become intoxicated. On this appeal, only those counts seeking recovery against Amax are at issue.

Count I, brought on behalf of Elmer, and count X, brought on behalf of Bernice, are each based on the theory of common law negligence. Specifically, they allege that Amax, by and through its agents, committed one or more of the following acts or omissions:

> "(A) Negligently and carelessly served alcoholic beverages to its agent, John Snyder, when they knew, or in the exercise of due care should have known, that he must embark thereafter on the public highways, presenting a hazard to others.
>
> (B) Negligently and carelessly provided alcoholic beverages to John Snyder in an amount sufficient to intoxicate him and then permitted him to drive upon the public highways.
>
> (C) Negligently and carelessly failed to prevent intoxicated employees from driving from the Y.M.C.A. day camp.
>
> (D) Negligently and carelessly failed to provide transportation for intoxicated employees when they knew, or should have known, that such was necessary to protect persons, including plaintiff.
>
> (E) Negligently and carelessly continued to give John Snyder intoxicating beverages when they knew, or should have known, that such presented a hazard to persons, including plaintiff."

Count II, brought on behalf of Elmer, and count XI, brought on behalf of Bernice, allege that Amax is vicariously liable because its agent, John Snyder, allegedly did the following:

"(A) Negligently and carelessly drove a motor vehicle while intoxicated.

(B) Negligently and carelessly failed to keep its motor vehicle under proper control.

(C) Negligently and carelessly failed to keep a lookout for other vehicles rightfully on said roadway.

(D) Negligently and carelessly failed to stop at a stop sign, contrary to Chapter 95½, Section 11—305."

Count III, brought on behalf of Elmer, alone, is premised on the theory of willful and wanton misconduct. It alleges that Amax:

"(A) Willfully and wantonly and with a conscious disregard for, or an utter indifference to, the safety of others caused John Snyder to become intoxicated when they knew he would drive on the public highways in such a condition.

(B) Willfully and wantonly and with a conscious disregard for, or an utter indifference to, the safety of others gave intoxicants to an intoxicated person, John Snyder, when they knew he would drive a motor vehicle home from the party.

(C) Willfully and wantonly and with a conscious disregard for, or an utter indifference to, the safety of others allowed its employee, John Snyder, to become intoxicated at its company party and to leave the party driving a motor vehicle."

Amax moved for summary judgment in its favor on each of these counts pursuant to section 2—1005(b) of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(b)). In support of this motion, Amax submitted an affidavit by Dave Mulherin, its personnel supervisor. Mulherin's affidavit stated that Amax and the Oil, Atomic, and Chemical Workers Union Club (OACW Club) had co-sponsored a picnic on September 18, 1982. That picnic was "for the welfare, benefit and social pleasure" of Amax Zinc Co.'s employees, was voluntary, and in no way involved "any work by Amax Zinc Co. employees for Amax Zinc Co." According to the affidavit, Amax

"is not engaged in the liquor business or liquor traffic, it is not licensed under the provisions of the Dramshop Act as a liquor dealer, wholesaler, distributor or manufacturer, is not licensed to do business as a liquor dealer, wholesaler, distributor or manufacturer, and does not control or establish the rules and regulations of the OACW Club but that the OACW Club is governed and controlled by its employees."

An additional affidavit by Mulherin indicated that at least 262 adults attended the picnic. Beer was provided free of charge. The cost for that beer was split between Amax and the OACW Club. Amax

paid two-thirds and the OACW Club paid one-third. Mulherin's initial affidavit specified that beer was given away for the social pleasure of the employees attending, that John Snyder voluntarily attended the picnic, and that he was "in no way acting on behalf of Amax Zinc Co. prior to, during or after said picnic."

Plaintiffs responded by filing an affidavit by their trial counsel, Bruce Cook. The allegations of fact made in that affidavit did not purport to be based on Mr. Cook's personal knowledge. At best, they constitute nothing more than hearsay. Plaintiffs did, however, also offer for the court's consideration depositions of Ronald Funk, a member of OACW who was in charge of the soda and beer stand at the picnic; Hester Owens, employee relations coordinator for Amax, who planned the picnic; and Kathleen Feher, director of medical records at St. Elizabeth Hospital in Belleville.

In an order filed on December 29, 1986, the circuit court granted Amax's motion and entered summary judgment against plaintiffs on counts I, II, III, X and XI of their complaint. In so doing, it expressly found that there was no just reason for delaying an appeal. (See 107 Ill. 2d R. 304(a).) This appeal followed.

■■ The purpose of summary judgment is not to try an issue of fact, but to determine whether a triable issue of fact exists. (*Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313, 316, 511 N.E.2d 805, 807.) Although summary judgment is recognized as a salutary procedure in the administration of justice, it should be granted with caution so that the right to trial of conflicting facts and inferences is not usurped. Only when the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law should summary judgment be awarded. (158 Ill. App. 3d at 316-17, 511 N.E.2d at 807.) We agree with the trial court that this is such a case.

■■■ As our previous discussion of the pleadings has suggested, counts I and X of plaintiffs' complaint seek to impose liability on Amax based on its alleged negligence in serving alcoholic beverages to its employee, John Snyder, at the company picnic and in permitting him to drive himself home after becoming intoxicated there. The courts of this State have consistently held, however, that noncommercial suppliers of liquor, such as Amax, cannot be held liable under common law negligence for supplying intoxicants to persons who become intoxicated and then injure third parties. (See, *e.g.*, *Martin v. Palazzolo Produce Co.* (1986), 146 Ill. App. 3d 1084, 497 N.E.2d 881; *Zamiar v. Linderman* (1985), 132 Ill. App. 3d 886, 478 N.E.2d 534;

*Wienke v. Champaign County Grain Association* (1983), 113 Ill. App. 3d 1005, 447 N.E.2d 1388; *Miller v. Moran* (1981), 96 Ill. App. 3d 596, 421 N.E.2d 1046; *Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 199 N.E.2d 300.) This is so even where, as here, the supplier of the liquor is the intoxicated person's employer. *Wienke v. Champaign County Grain Association* (1983), 113 Ill. App. 3d 1005, 1008, 447 N.E.2d 1388, 1390.

Plaintiffs claim that the result here should be different because Amax allegedly hired security guards to patrol the picnic and thereby assumed a greater legal obligation to control its employees. The existence of security guards was not alleged in plaintiffs' complaint, and we have found nothing in the record which suggests in any way that those security guards had any responsibility of any kind for making sure that persons did not drive themselves home from the picnic in an intoxicated state. Indeed, even the hearsay affidavit submitted by Bruce Cook in opposition to the summary judgment motion stated that Amax did not instruct the guards to test or examine employees leaving for sobriety. If, as the courts have held, a defendant-employer cannot be held liable for damages sustained by those injured by an intoxicated employee where the employee was actually helped to his automobile by agents of the defendant (see *Wienke v. Champaign County Grain Association* (1983), 113 Ill. App. 3d 1005, 1008, 447 N.E.2d 1388, 1390), we do not believe that such an employer can be liable where its agents have simply failed to take steps to prevent an intoxicated employee from driving home. Plaintiffs seek to justify their position based on our recent decision in *Harris v. Gower, Inc.* (1987), 153 Ill. App. 3d 1035, 506 N.E.2d 624, but that case is distinguishable on its facts and was premised on notions of premises liability. It is inapposite.

■ In counts II and XI, plaintiffs contend that defendant should be vicariously liable to them under the doctrine of *respondeat superior* because John Snyder, defendant's employee, was negligent in becoming intoxicated and that negligence occurred while Snyder was acting within the scope of his employment. There are two problems with this argument. First, the affidavit submitted on behalf of defendant's motion for summary judgment clearly states that Snyder was not acting within the scope of his agency "prior to, during or after [the] picnic." Plaintiffs have offered nothing which would indicate that there may be some dispute about this fact. Second, because no action for common law negligence will lie in this State for serving alcohol to an employee who subsequently becomes intoxicated and injures a third party, it necessarily follows that an employer cannot be held vi-

cariously liable for the negligence of his employee in becoming intoxicated.

█ Count III of plaintiffs' complaint is also defective. That count seeks recovery for the intentional tort of willful and wanton misconduct. The pleadings do not, however, contain averments of fact sufficient to support that claim. Count III merely adds the words willful and wanton to allegations made by plaintiffs in their negligence counts. This is not enough. The mere addition of the words willful or wanton to factual allegations utilized in a negligence claim is insufficient to support a cause of action for an intentional tort. *Harkcom v. East Texas Motor Freight Lines, Inc.* (1982), 104 Ill. App. 3d 780, 783, 433 N.E.2d 291, 294.

Even if plaintiffs had made the requisite factual allegations, however, their claim for willful and wanton misconduct would nevertheless fail. As with negligence, willful and wanton misconduct has not been recognized as a valid basis for imposing liability on a supplier of alcohol. The only remedy against alcohol suppliers is that provided by the legislature in the Dramshop Act (Ill. Rev. Stat. 1985, ch. 43, par. 135). (*Zamier v. Linderman* (1985), 132 Ill. App. 3d 886, 889, 478 N.E.2d 534, 535.) Plaintiffs make no claim that the Dramshop Act would apply under the circumstances present here.

Plaintiffs urge us to create a common law remedy against suppliers of alcohol which goes beyond the Dramshop Act, and they cite decisions from a number of other jurisdictions where such common law remedies have been fashioned. As we have recently noted, however, if the law in this area is to be changed in the State of Illinois, that change must come from the legislature. See *Martin v. Palazzolo Produce Co.* (1986), 146 Ill. App. 3d 1084, 1086, 497 N.E.2d 881, 883.

For the foregoing reasons, the order of the circuit court of St. Clair County granting summary judgment in favor of defendant on counts I, II, III, X, and XI of plaintiffs' fifth amended complaint is affirmed.

Affirmed.

KARNS and LEWIS, JJ., concur.