THIRD DIVISION
September 29, 2010

No. 1-09-0542

| | | |
|---|---|---|
| ALFREDA HICKS, Individually and as | ) | APPEAL FROM THE |
| Special Administrator of the Estate of | ) | CIRCUIT COURT OF |
| Terrell K. Simmons, Deceased, | ) | COOK COUNTY |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| KOREAN AIRLINES COMPANY, | ) | |
| a/k/a Korean Air a/k/a Korean Airlines, | ) | |
| | ) | No. 02 L 12228 |
| Defendant-Appellee | ) | |
| | ) | |
| (New Seoul Korean, a/k/a New Seoul | ) | |
| Charcoal Barbeque Ribs, a/k/a New | ) | |
| Seoul Restaurant; Tom Kim; Marek | ) | |
| Jaczynski; Unknown Owners of Colonial | ) | |
| Plaza West located at 638 W. Algonquin Road, | ) | |
| Des Plaines, Illinois, 60016, and Colonial Plaza | ) | |
| East; Michael Namovitz; Estate of Tracy C. Kim, | ) | |
| Deceased; and Keun Kim, | ) | HONORABLE |
| | ) | ROBERT LOPEZ CEPERO, |
| Defendants). | ) | JUDGE PRESIDING. |

OPINION ON DENIAL OF REHEARING

JUSTICE STEELE  delivered the opinion of the court:

Plaintiff Alfreda Hicks (Hicks), individually and as special administrator of the estate of

Terrell K. Simmons, deceased (Simmons), appeals an order of the circuit court of Cook County

granting summary judgment to defendant Korean Airlines Company, a/k/a Korean Air, a/k/a

Korean Airlines (Korean Air), on Hicks' claim that Korean Air was vicariously liable for the

allegedly negligent and intoxicated driving of a Korean Air employee.  The circuit court ruled

that Hicks' claim was preempted by the Dramshop Act (235 ILCS 5/6-21 (West 2000)). For the following reasons, we reverse and remand the case for further proceedings.

BACKGROUND

The record discloses the following facts. On March 5, 2003, Hicks filed her first amended complaint against Korean Air and other defendants,[1] arising out of an automobile collision that occurred on the night of October 4, 2001. Tracy Kim, an employee of Korean Air, struck a car driven by Simmons, killing both Kim and Simmons. Count II of the first amended complaint alleged that Korean Air was liable for Kim's allegedly negligent and intoxicated driving, because Kim was acting within the scope of her employment with Korean Air. Count III of the first amended complaint alleged that Korean Air was liable under the Dramshop Act (235 ILCS 5/6-21 (West 2000)) for supplying and serving Kim alcohol at a dinner purportedly sponsored by Korean Air prior to the automobile collision.

On January 12, 2005, Korean Air filed a motion for summary judgment. Korean Air argued that it was not vicariously liable because Kim was not acting within the scope of her

---

[1] New Seoul Korean, a/k/a New Seoul Charcoal Barbeque Ribs, a/k/a New Seoul Restaurant, Tom Kim, Marek Jaczynski, unknown owners of Colonial Plaza West located at 638 W. Algonquin Road, Des Plaines, Illinois, 60016, and Colonial Plaza East, Michael Namovitz, the estate of Tracy C. Kim, deceased, and Keun Kim were named as defendants, but are not parties to this appeal. Moreover, the estate of Tracy C. Kim, deceased, and Keun Kim are not listed on the notice of appeal to this court.

employment when the collision occurred. Korean Air asserted that Kim had voluntarily attended a spontaneous dinner attended by Korean Air employees for the purpose of saying goodbye to another employee being transferred to Atlanta, Georgia. Korean Air also asserted that Kim was not expressly invited to a second restaurant (that did not serve alcohol) for karaoke after dinner. Korean Air further asserted that when Kim left the second restaurant, she was not going to or coming from work or performing job-related duties. Moreover, Korean Air argued that it was neither a dramshop nor a social host and, thus, had no liability under the Dramshop Act (235 ILCS 5/6-21 (West 2000)).

In her response to Korean Air's motion, Hicks argued that the purpose of the initial dinner was to entertain the general manager of the Los Angeles branch of the marketing department for Korean Air, and secondarily, a farewell dinner for the transferred employee. Hicks claimed that the manager was visiting different branches of Korean Air to discuss the launch of a credit card linked to the company's frequent flyer program. Hicks also asserted that the dinner was paid for by the deputy general manager of Korean Air, although he gave a deposition denying that he submitted the bill to his expense account. Hicks further asserted that Korean Air paid the bill at the second restaurant as a sales promotion expense. Hicks maintained a genuine issue of material fact existed as to whether Kim was acting within the scope of her employment after she left the second restaurant. However, Hicks conceded that she had not uncovered sufficient facts to find that Korean Air acted as a dramshop and, thus, made no argument against the motion for summary judgment on that issue.

On July 17, 2005, the circuit court entered an order denying Korean Air's motion for summary judgment. The transcript of proceedings shows that the circuit court believed there were genuine issues of material fact about whether Kim was acting within the scope of her employment at the time of the collision.

On July 24, 2008, Korean Air filed a second motion for summary judgment, arguing that, based on case law, including Charles v. Seigfried, 165 Ill. 2d 482, 488, 651 N.E.2d 154, 158 (1995), it could not be directly or vicariously liable for Kim's alleged negligence because the Dramshop Act preempts "the entire field of alcohol-related liability." On August 26, 2008, Hicks filed a response, arguing: (1) the circuit court already ruled there was a genuine question of material fact about whether Kim was acting within the scope of employment; (2) there was evidence that attendance at such dinner meetings – and consumption of alcohol at such meetings – was considered a condition of employment; and (3) a statement from a Korean Air employee, Peter Yang, supported the theory that Korean Air voluntarily assumed the duty of preventing employees from driving drunk after such events.

On September 30, 2008, following a hearing on the matter, the circuit court entered an order granting summary judgment to Korean Air "for the reasons stated in the record." The transcript of proceedings discloses that the circuit court upheld its denial of the first motion for summary judgment, but ruled that the causes of action against Korean Air were preempted by the Dramshop Act (235 ILCS 5/6-21 (West 2000)). Hicks filed a motion to reconsider. The circuit court denied her motion on February 11, 2009, additionally finding no just reason to delay

enforcement or appeal under Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). On February 27, 2009, Hicks filed a timely notice of appeal to this court.

DISCUSSION

The sole issue on appeal is whether the circuit court erred in granting summary judgment to Korean Air. Appellate review of a summary judgment ruling is de novo. Arangold Corp. v. Zehnder, 204 Ill. 2d 142, 146, 787 N.E.2d 786, 789 (2003). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008).

The question before us is whether the claims against Korean Air are preempted by the Dramshop Act (235 ILCS 5/6-21 (West 2000)). "The historic common law rule, adhered to in this State, is that there is no cause of action for injuries arising out of the sale or gift of alcoholic beverages." Charles v. Seigfried, 165 Ill. 2d 482, 486, 651 N.E.2d 154, 157 (1995). "[I]n Illinois, the General Assembly has preempted the entire field of alcohol-related liability through its passage and continual amendment of the Dramshop Act." Charles, 165 Ill. 2d at 488, 651 N.E.2d at 158. "[F]ew rules of law are as clear as that no liability for the sale or gift of alcoholic beverages exists in Illinois outside of the Dramshop Act." Charles, 165 Ill. 2d at 490, 651 N.E.2d at 158. As a result, this court has generally refused to impose liability under either the common law or the Dramshop Act on employers who supply their employees with free alcohol at employer-sponsored events. Holtz v. Amax Zinc Co., 165 Ill. App. 3d 578, 583, 519 N.E.2d 54, 58 (1988); Martin v. Palazzolo Produce Co., 146 Ill. App. 3d 1084, 1087, 497 N.E.2d 881, 883

(1986); <u>Desmond v. Stearns</u>, 134 Ill. App. 3d 479, 483, 480 N.E.2d 1271, 1273 (1985); <u>Thompson v. Trickle</u>, 114 Ill. App. 3d 930, 932, 449 N.E.2d 910, 912 (1983); <u>Wienke v. Champaign County Grain Ass'n</u>, 113 Ill. App. 3d 1005, 1008, 703, 447 N.E.2d 1388, 1390 (1983); <u>Brehm v. Dobson</u>, 15 Ill. App. 3d 285, 304 N.E.2d 149 (1973) (abstract); <u>Richardson v. Ansco, Inc.</u>, 75 Ill. App. 3d 731, 733, 394 N.E.3d 801, 802 (1979); <u>Miller v. Owens-Illinois Glass Co.</u>, 48 Ill. App. 2d 412, 423-24, 199 N.E.2d 300, 306 (1964). Korean Air relied on this body of case law to obtain summary judgment in the circuit court.

During the pendency of this appeal, the Illinois Supreme Court issued its decision in <u>Simmons v. Homatas</u>, 236 Ill. 2d 459, 925 N.E.2d 1089 (2010). In <u>Simmons</u>, the court answered two certified questions, including:

" 'Whether the defendant, Diamonds, a business operator who is not subject to the *Dram Shop Act* [sic] (because it does not sell or serve alcoholic beverages upon its premises), has a duty of ordinary care to the Simmons Plaintiffs, who while motoring on a public highway, were killed due to the negligent operation of a motor vehicle driven by Homatas, who within a short period of time prior to the aforesaid motor vehicle collision, was an invitee of defendant's place of business under the following circumstances:

> • where defendant's valet service took control of Homatas's vehicle upon his entering defendant's place of business;
>
> • encouraged its invitee Homatas to bring alcoholic beverages onto its premises in order [to] consume to the point of intoxication;

• thereafter removed its invitee Homatas from the premises because of his intoxication;

• ordered and assisted the invitee Homatas into the driver seat of his vehicle;

• then after controlling its invitee's automobile while he was on its premises, relinquished said automobile into the hands of its invitee Homatas[;]

• while defendant knew or should have known that due to Homatas's intoxication he was unable to operate a motor vehicle;

• then allowed said Homatas to drive the vehicle away from the premises onto the public highway[.]' " Simmons, 236 Ill. 2d at 465, 925 N.E.2d at 1094.

The Simmons court answered this question in the affirmative.

After reviewing the history of the common law and the Dramshop Act, the Simmons court reasoned:

"These cases demonstrate that the Dramshop Act provides a framework for determining whether a provider of alcohol will be exposed to liability. If the provider is a business that sells alcohol, liability may attach, but only under the Dramshop Act, not under the common law. If the provider is merely a social host, liability will not attach, either under the statute or under the common law. What the above cases do not discuss is liability for

injuries that arise not as a result of the provision of alcohol, but as a result of the encouragement of, or assistance in, tortious conduct.

The preemption stated in <u>Charles</u> was limited in exactly this way. In that case, this court concluded 'few rules of law are as clear as that no liability for <u>the sale or gift of alcoholic beverages</u> exists in Illinois outside of the Dramshop Act.' (Emphasis added.) Although the <u>Charles</u> court used the phrases 'alcohol-related liability' (<u>Charles</u>, 165 Ill. 2d at 490) and 'alcohol-induced injuries' (<u>Charles</u>, 165 Ill. 2d at 489), the court's analysis addressed only claims arising from the defendant's provision of alcohol. The court did not need to consider whether actions of the defendant, independent of providing alcohol, led to the third party's injuries. This distinction is relevant to the present case."

<u>Simmons</u>, 236 Ill. 2d at 469-70, 925 N.E.2d at 1096.

The <u>Simmons</u> court noted a similar distinction was recognized in <u>Wakulich v. Mraz</u>, 203 Ill. 2d 223, 785 N.E.2d 843 (2003). <u>Simmons</u>, 236 Ill. 2d at 470-71, 925 N.E.2d at 1097. In <u>Wakulich</u>, the plaintiff sued two brothers, alleging they were negligent in providing alcohol to her daughter and in failing to act reasonably to protect her daughter after voluntarily undertaking to care for her after she became unconscious. <u>Wakulich</u>, 203 Ill. 2d at 227, 785 N.E.2d at 846. The <u>Wakulich</u> court affirmed the dismissal of the negligence claim relating to the brothers' providing alcohol to the daughter, but held that the plaintiff's voluntary undertaking claim should not have been dismissed. <u>Wakulich</u>, 203 Ill. 2d at 246-47, 785 N.E.2d at 856-57. The <u>Wakulich</u> court reasoned the fact the brothers served as social hosts was irrelevant to this claim, as any such

liability arose "by virtue of their voluntary assumption of a duty to care *** irrespective of the circumstances leading up to that point." Wakulich, 203 Ill. 2d at 242, 785 N.E.2d at 854.

The Simmons court also surveyed cases decided by this court where liability was not based on a tavern's provision of alcohol to a patron, but on the actions of the tavern after the patron became intoxicated, including Harris v. Gower, Inc., 153 Ill. App. 3d 1035, 1037-38, 506 N.E.2d 624, 624-25 (1987), where bar employees placed an intoxicated, unconscious patron in his car in which the patron later froze to death. Simmons, 236 Ill. 2d at 471-72, 925 N.E.2d at 1097-98 (and cases cited therein).

The Simmons court then discussed two particular cases involving employers supplying their employees with free alcohol at employer-sponsored events:

"[Defendant] argues that the appellate court later recognized Harris as being based on premises liability and that it later distinguished Harris in Holtz v. Amax Zinc Co., 165 Ill. App. 3d 578 (1988). The court's distinguishing of Harris, however, only emphasizes the difference between the mere furnishing of alcohol to a person and conduct that arises to negligence independent of providing alcohol. In Holtz, an employee became intoxicated at a company picnic and later drove away, which resulted in severe injuries to the plaintiff. Holtz, 165 Ill. App. 3d at 579-80. The plaintiff argued that the employer was negligent in permitting the employee to leave, knowing that the employee was intoxicated. The court held that an employer cannot be liable 'where its agents have simply failed to take steps to prevent an intoxicated employee from driving home.' Holtz, 165 Ill. App. 3d at 583.

As [defendant] notes, the court distinguished <u>Harris</u> as based on premises liability. However, just as the voluntary undertaking doctrine allowed recovery in <u>Wakulich</u> and the duty of a tavern to protect its patrons from violence allowed recovery in [<u>Lessner v. Hurtt</u>, 55 Ill. App. 3d 195, 197, 371 N.E.2d 125, 126 (1977)], premises liability in <u>Harris</u> was merely one vehicle through which negligent conduct independent of serving alcohol could be properly pled. Thus, in <u>Holtz</u>, the employer was not liable, as there was no further conduct, beyond serving alcohol, that exposed the employer to liability. The court in <u>Holtz</u> properly held that merely permitting an intoxicated employee to leave does not create liability." <u>Simmons</u>, 236 Ill. 2d at 472-73, 925 N.E.2d at 1098.

<u>Simmons</u> thus approved of <u>Holtz</u>. However, as Hicks notes, in <u>Holtz</u>, the employer's personnel supervisor submitted an affidavit stating that the picnic was for the welfare, benefit, and social pleasure of the employees, was voluntary, involved no work by the employees for the company, and that the employee at issue voluntarily attended the picnic and was in no way acting on behalf of the company prior to, during, or after the picnic. <u>Holtz</u>, 165 Ill. App. 3d at 581-82, 519 N.E.2d at 57. Consequently, this court concluded that summary judgment was properly granted in the employer's favor because the plaintiffs did not offer any evidence to raise a genuine issue about whether the employee was acting within the scope of his agency. <u>Holtz</u>, 165 Ill. App. 3d at 583-84, 519 N.E.2d at 58.

The <u>Holtz</u> court did not hold that vicarious liability is preempted by the Dramshop Act. Rather, this court held in <u>Holtz</u> that there was no genuine issue of material fact about whether the

employee was acting within the scope of employment.[2]  In contrast, the circuit court here ruled a genuine issue of material fact exists regarding whether Kim's actions were within the scope of her employment.

The Simmons court continued:

"[Defendant] also relies, in part, on Wienke v. Champaign County Grain Ass'n, 113 Ill. App. 3d 1005 (1983), to contend that helping Homatas to his vehicle does not

---

[2]  Indeed, had the Holtz court believed the Dramshop Act preempted vicarious liability in that case, it could have so held and omitted the discussion of the affidavit and the scope of employment issue.

In its petition for rehearing, Korean Air correctly notes that the Holtz court also stated: "[B]ecause no action for common law negligence will lie in this State for serving alcohol to an employee who subsequently becomes intoxicated and injures a third party, it necessarily follows that an employer cannot be held vicariously liable for the negligence of his employee in becoming intoxicated." Holtz, 165 Ill. App. 3d at 583-84, 519 N.E.2d at 58.

Korean Air thus argues that this court misreads Holtz.  We disagree.  The Holtz court is discussing nonliability – vicarious or otherwise -- related to the provision of alcohol.  Holtz does not address the possibility of vicarious liability for the negligent driving within the scope of employment, because, unlike this case, there was no genuine issue of material fact regarding the employment issue.

-11-

trigger liability. In <u>Wienke</u>, the plaintiffs' decedents were injured when an intoxicated employee of the defendant, while driving, collided with the decedents' vehicle. <u>Wienke</u>, 113 Ill. App. 3d at 1005-06. Prior to the collision, the employee had been attending an event sponsored by the defendant, at which he was served alcohol. The employee left the event with two coworkers. The coworkers drove the employee to his vehicle, which was parked approximately four miles from the event. At that time, the intoxicated employee entered his vehicle and drove away, later causing the collision. <u>Wienke</u>, 113 Ill. App. 3d at 1006.

The court first rejected a theory of liability based on the defendant having furnished alcohol to its employee, consistent with both its own precedent and this court's holding in [<u>Cunningham v. Brown</u>, 22 Ill. 2d 23, 29, 174 N.E.2d 153, 156 (1961)]. <u>Wienke</u>, 113 Ill. App. 3d at 1009. The court also considered whether having coworkers drive the employee to his car, knowing he was intoxicated, could trigger liability for the employer. In so doing, the court cited <u>Gustafson v. Mathews</u>, 109 Ill. App. 3d 884 (1982). In that case, an intoxicated patron was assisted by bar employees out to the parking lot to his van, where his five children had been waiting. The patron drove away and later collided with a truck, killing the patron and four of the children. <u>Gustafson</u>, 109 Ill. App. 3d at 885, 886. The <u>Gustafson</u> court held that common law imposed no duty on the bar owners, suggesting that to do so would require imposing the same duty to all owners of parking lots, and would require them to 'evaluate the behavior of their customers to determine whether they have the capacity to drive safely.' <u>Gustafson</u>, 109

Ill. App. 3d at 887. The <u>Wienke</u> court echoed this statement, indicating that finding liability would 'impose a heavy burden upon those *** who aid others who may be intoxicated in getting to their automobiles.' <u>Wienke</u>, 113 Ill. App. 3d at 1010.

Gustafson and <u>Wienke</u>, according to [defendant], represent courts' efforts to prevent open-ended liability for dram shops, restaurants, parking lot owners and others that may be put in a position of helping a patron to his or her vehicle. [Defendant] argues that allowing recovery in this case would open such a 'Pandora's box.' We disagree.

Of concern to the courts in <u>Wienke</u> and <u>Gustafson</u> was whether persons should be given the burden of determining whether a person was intoxicated and whether that person would drive safely or recklessly. However, our decision in this case does not implicate those concerns. [Defendant] took on the burden of determining whether Homatas was dangerously intoxicated when club employees discovered him vomiting in the restroom, a likely result of his intoxication. [Defendant], on its own initiative, made this determination and expelled Homatas from the club. In doing so, [defendant] acquired a duty not to encourage and assist Homatas in the tortious conduct of driving while intoxicated. [Defendant], in effect, argues both that it should not be required to determine whether a patron is intoxicated and that it cannot be not responsible when it nonetheless voluntarily chooses to make that determination and then facilitates that patron's tortious conduct. Such an argument is untenable. We conclude that the Dramshop Act does not preempt plaintiffs' common law claims in this case, and does not preclude imposing a duty of care on [defendant]." <u>Simmons</u>, 236 Ill. 2d at 473-75, 925 N.E.2d at 1098-99.

1-09-0542

The Simmons court did not discuss – as it was not germane to the case – the Wienke court's analysis of the employment issue:

"Plaintiffs maintain that defendants here should be held to a duty to the public which was not imposed upon the defendants in Gustafson and [Miller v. Moran, 96 Ill. App. 3d 596, 421 N.E.2d 1046 (1981)], because the intoxicated person here (Eiskamp) was alleged to be an employee of the defendant Association and a coemployee of the other defendants. Plaintiffs maintain that as a result of the employment relationship, defendants had a greater control over the intoxicated person than in those cases. However, in Richardson v. Ansco, Inc.[, 75 Ill. App. 3d 731, 394 N.E.2d 801 (1979)], an allegation that an intoxicated person was an employee of the defendant and had been permitted to become intoxicated during work was held to be an insufficient basis to impose liability on the defendant-employer for damages sustained by those injured by the employee as a result of his subsequent drunken driving. The complaint alleged that the employer knew the intoxicated employee would soon be driving home. Unlike the complaint in the instant case, there, the complaint contained no allegation that the defendant-employer served or furnished the liquor to the intoxicated employee. Nevertheless, the element of control would have been the same. We likewise conclude that the existence of the employment relationship is not a sufficient difference from the situation in Gustafson or Miller for us to impose a duty on the employer for injury to third parties inflicted outside the scope of the employment relationship." (Emphasis added.) Wienke, 113 Ill. App. 3d at 1008, 447 N.E.2d at 1390.

-14-

Wienke, like Holtz, did not address the situation where, as here, the circuit court has found a genuine issue of material fact regarding whether the employee's actions were within the scope of his or her employment.

Korean Air argues that since certain cases, including Wienke, Thompson, Richardson, and Martin, did not address the issue of whether an employer can be vicariously liable for the negligent driving of an employee is "a distinction without a difference." However, in Simmons and Wakulich, the Illinois Supreme Court made clear that there is a difference between claims arising from the defendant's provision of alcohol and claims based on other theories of liability.

Korean Air argues that Hicks "asks this [c]ourt to adopt the rule that an employer may be held indirectly liable on a theory of vicarious liability for the same conduct that would not subject an employer to direct liability for negligence." This is true, but it is equally true of every case of vicarious liability under the theory of respondeat superior. Hicks is asking this court to rule that a jury could find Korean Air vicariously liable under the theory of respondeat superior for Kim's allegedly negligent driving, regardless of who provided her with alcohol, in accord with Simmons and Wakulich.[3]

---

[3] In its petition for rehearing, Korean Air claims this court misconstrued the factual basis for the complaint. Korean Air correctly notes that the complaint contains allegations related to the question of whether Korean Air supplied alcohol and whether Korean Air expected Kim to drink alcohol. The fact that our opinion is not based on those allegations does not mean that we misconstrued the complaint or that the claim is barred absent those allegations.

1-09-0542

Korean Air also contends such a ruling would upset the legislative scheme established by the Dramshop Act, but such is not the case where the vicarious liability is not based on Korean Air's provision of alcohol. Reversing the summary judgment in this case no more upsets the legislative scheme or usurps legislative power than do the decisions in Simmons and Wakulich.

Korean Air further argues that Simmons and Wakulich required affirmative misconduct on the part of the defendants and cannot be extended to vicarious liability. Simmons and Wakulich do not set forth such a rule and do not imply it. Simmons approvingly cited Lessner, in which the tavern did not engage in affirmative misconduct, but allegedly failed to protect one of its patrons from another. Lessner, 55 Ill. App. 3d at 197, 371 N.E.2d at 126. Moreover, the negligence alleged in Wakulich was that the brothers failed to act reasonably to protect the decedent after voluntarily undertaking to care for her. Wakulich, 203 Ill. 2d at 227, 785 N.E.2d at 846. Liability for negligence can arise from acts, omissions or, in the case of respondeat superior, the employer-employee relationship, so long as the employee's negligence is within the scope of the employment. In cases where the employee's negligence is not within the scope of the employment, cases like Holtz remain good law. Accordingly, Korean Air's arguments fail to persuade this court that summary judgment was properly entered in this case.

CONCLUSION

For all of the aforementioned reasons, this court concludes that, in light of Simmons, the circuit court erred in entering summary judgment in favor of Korean Air. The Dramshop Act broadly preempts claims arising from the defendant's provision of alcohol. The Dramshop Act does not preempt claims based on legal theories independent from the defendant's provision of

-16-

alcohol. Where, as here, the circuit court ruled that Kim's <u>respondeat superior</u> claim was preempted by the Dramshop Act, we hold that the Dramshop Act does not preempt Hicks' claim that Korean Air is vicariously liable under the theory of <u>respondeat superior</u> because Hicks' <u>respondeat superior</u> claim is independent of her Dramshop Act claim. Thus, we reverse the judgment of the circuit court of Cook County and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

NEVILLE and MURPHY, JJ., concur.

1-09-0542

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | ALFREDA HICKS, Individually and as Special Administrator of the Estate of Terrell K. Simmons, Deceased,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>KOREAN AIRLINES COMPANY, a/k/a Korean Air, a/k/a Korean Airlines,<br><br>Defendant-Appellee<br><br>(New Seoul Korean, a/k/a New Seoul Charcoal Barbeque Ribs, a/k/a New Seoul Restaurant; Tom Kim; Marek Jaczynski; Unknown Owners of Colonial Plaza West located at 638 W. Algonquin Road, Des Plaines, Illinois, 60016, and Colonial Plaza East; Michael Namovitz; Estate of Tracy C. Kim, Deceased; and Keun Kim,<br><br>Defendants). |
| Docket No.<br><br>COURT<br><br>Opinion Filed | No. 1-09-0542<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>September 29, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE STEELE delivered the opinion of the court:<br><br>Neville and Murphy, JJ.,       concur<br><br>dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>Circuit Ct. of Cook County, Law Div.<br><br>The Honorable Robert Lopez Cepero, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorney for **Plaintiff-Appellant**:    Law Offices of Joseph G. Klest, of Schaumburg, IL (Joseph G. Klest, of Counsel)<br><br>Novoselsky Law Offices, of Chicago, IL (David A. Novoselsky and Brian A. Schroeder, of Counsel)<br><br>Attorneys for **Defendant-Appellee:**    Greenberg Traurig, LLP, of Chicago, IL (Michael D. Karpeles, Gregory E. Ostfeld, and Tiffany S. Fordyce, of Counsel) |