No. 2--00--0698 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

RAUL G. ELIZONDO, as Special Adm'r of the Estate of Rodolfo Garcia, Jr., Deceased, 

Plaintiff-Appellant,

 

v. 

RIGOBERTO RAMIREZ, MANUELA RAMIREZ, and JUDITH ALEJANDRA RAMIREZ,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Kane County.

No. 98--L--413

Honorable

Timothy Q. Sheldon,

Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Raul G. Elizondo, as special administrator of the estate of Rodolfo Garcia, Jr., appeals the decision of the circuit court of Kane County granting summary judgment in favor of defendants, Rigoberto Ramirez, Mrs. Rigoberto Ramirez (Manuela), and Judith Ramirez.  Plaintiff contends that the trial court erred in finding defendants owed plaintiff's decedent, Rodolfo Garcia, Jr., no duty of care.  For the reasons that follow, we affirm the judgment of the trial court. 

BACKGROUND

Rigoberto and Manuela Ramirez own a house located in the City of Aurora.  At the time of the incident that forms the basis of this suit, defendants resided in an apartment located in the upper floor of the house.  The apartment on the lower floor was vacant.  Rigoberto and Manuela gave their 15-year-old daughter, Judith, permission to have a party in the ground-floor apartment.  The party was held on April 5, 1997.  Manuela gave Judith the keys to the apartment.  Judith told two of her friends to tell other people about the party.  There was no guest list.  Only teenagers were invited.  At about 7:30 p.m., Rigoberto took Judith to the store to buy some supplies for the party.  At 9:15 p.m., one of Judith's friends who had agreed to act as the disk jockey for the party arrived and began setting up his equipment in the kitchen.  The disk jockey was not paid for his services.  Judith locked the doors to the apartment's bedrooms, limiting the party to the kitchen, living room, dining room, and porch.  No security was provided or hired.  The party commenced at approximately 10:15 p.m.

Between 50 and 70 people attended that party.  The apartment was lit by a strobe light and a few other lights; witnesses described it as dark.  There was no lighting on the porch, and it was described as "pitch dark."  A sign on the front entrance stated "$3.00 at door, no gang colors."  A person stood at the front door collecting the entry fee, and Judith greeted people at the door as well.  Five other partygoers stated that they were not charged the $3 fee.  There was a keg of beer at the party and some beer in the refrigerator.  Most of the guests drank beer from the keg, using clear plastic cups.  Judith purchased and provided the cups.  Judith testified that she observed some of the partygoers consuming alcohol.

At some point in the evening, Judith left the party to go to the store and buy some candy.  She designated no one to be in charge during her absence.  As she was leaving, a police officer stopped his patrol car and called her over.  The officer inquired as to what was going on.  Judith stated that she was having a party.  The officer told her he would be watching the party.  He also told Judith to have fun and not cause any trouble.

Rodolfo arrived at the party while Judith was gone.  He paid the entry fee.  Rodolfo was a member of the Latin Kings.  When he arrived, several members of the Sureno 13s, a rival gang, were already present.  Both Rodolfo and the members of the Sureno 13s were wearing gang colors.  Rodolfo attempted to aggravate the other gang members by yelling out some gang slogans; however, the music was loud and they did not appear to hear him.

Later in the evening, Judith left the party to take a friend home.  As she was leaving, she encountered Rodolfo on the porch.  She told him to either go back inside or leave.  A second police officer then stopped and called Judith over to the car.  The officer asked if everything was alright, and Judith replied that it was.  Shortly after Judith left, someone from inside the apartment rushed out and struck Rodolfo in the face.  A fight ensued on the porch.  A second individual then exited the apartment and shot Rodolfo in the right side.  The first individual continued to kick and hit Rodolfo.  Rodolfo died a short time later after being taken to a hospital.  Judith was not present during the attack.

Prior to the altercation, Rigoberto, the father, who had just recently returned from a friend's house, went downstairs to the party.  Rigoberto brought a beer with him and spent some time walking around the lower apartment.  He never told anyone at the party to stop drinking.  Eventually, he went out onto the porch and continued drinking his beer.  A group of people had gathered on the porch.  Rigoberto was on the porch when the fight occurred.  Rigoberto stated that the fight lasted three or four minutes, but he also stated that it happened fast.  Rigoberto did nothing to stop the fight and went back upstairs.  When he arrived upstairs, Manuela had called the police because she had heard the gunshot.

During the party, Manuela, the mother, remained in the upstairs apartment.  Judith went upstairs on several occasions.  On one occasion, Judith told her mother that she had told someone to leave and he refused.  Manuela told her daughter to tell him to leave, but took no other action.  

Plaintiff brought a wrongful death and survival action alleging defendants' negligence based on the aforementioned facts.  Defendants moved for summary judgment.  The trial court granted this motion.  The trial court noted that no special relationship existed between defendants and Rodolfo such that they owed him a duty to protect him from the criminal acts of third parties.  Defendant now appeals.

ANALYSIS

Because this case comes to this court following a grant of summary judgment, review is 
de novo
.  
Corona v. Malm
, 315 Ill. App. 3d 692, 694 (2000).  Summary judgment should be granted only if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law.  
Stewart v. Jones
, 318 Ill. App. 3d 552, 557-58 (2001).  The record must be construed liberally in favor of the nonmovant and strictly against the movant.  
Largosa v. Ford Motor Co.
, 303 Ill. App. 3d 751, 753 (1999).  Although the party opposing the motion need not prove its case, it must present some facts that would arguably entitle it to judgment.  
Lutz v. Goodlife Entertainment, Inc.
, 208 Ill. App. 3d 565, 568 (1990).  Summary judgment is a drastic means of disposing of litigation and should be granted only where the movant's right to judgment is clear
 and free from doubt.  
Lutz
, 208 Ill. App. 3d at 568.

Further, whether the relationship between the parties is such that a duty exists is a question of law.  
Ziemba v. Mierzwa
, 142 Ill. 2d 42, 47 (1991).  Keeping in mind that the record must be construed liberally in the nonmovant's favor, the question of whether a duty exists is a proper subject for resolution by a court on a motion for summary judgment (
Ralls v. Village of Glendale Heights
, 233 Ill. App. 3d 147, 154 (1992)).  Thus, if, based upon the pleadings, depositions, and affidavits available, it appears that no duty exists, summary judgment for the defendant is appropriate.  
Greene v. City of Chicago
, 209 Ill. App. 3d 311, 313 (1991).

In order to prevail in an action for negligence, a plaintiff must prove the existence of a duty, a breach of that duty, and an injury proximately caused by the breach.  
Bartelli v. O'Brien
, 307 Ill. App. 3d 655, 659 (1999).  The rule is well established that, generally, no duty exists on the part of the owner or occupier of land to protect entrants from the criminal acts of third parties. 
 
Rowe v. State Bank
, 125 Ill. 2d 203, 215 (1988); 
Shortall v. Hawkeye's Bar & Grill
, 283 Ill. App. 3d 439, 443 (1996);  
Lutz
, 208 Ill. App. 3d at 568.  However, an exception to this rule exists.  A landowner or occupier has a duty to protect others against criminal acts where there is a special relationship between the landowner and the injured person.  
Hill v. Charlie Club, Inc.
, 279 Ill. App. 3d 754, 758 (1996).  Also, the criminal attack must have been reasonably foreseeable.  
Hill
, 279 Ill. App. 3d at 758.  Various policy considerations may affect the foreseeability analysis, including the likelihood of harm, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.  
Hill
, 279 Ill. App. 3d at 758.

Illinois courts recognize the following four special relationships sufficient to impose a duty upon a landowner to guard against third-party criminal attacks: (1) innkeeper and guest; (2) carrier and passenger; (3) one who voluntarily takes custody of another in a manner that limits the person's ordinary opportunities for protection; and (4) business invitor and invitee.  
Lutz
, 208 Ill. App. 3d at 569.  In the present case, the first three clearly do not apply; hence, the question before this court is whether defendants and plaintiff's decedent stood in the relationship of business invitors and invitee.  This relationship requires that the land where the plaintiff was injured be open to the general public for business purposes.  
Hills v. Bridgeview Little League Ass'n
, 195 Ill. 2d 210, 252 (2000).

Initially, plaintiff disputes the general rule that a special relationship is required before a landowner or occupier has a duty to guard against third-party criminal acts.  Plaintiff posits the existence of a duty on certain sections of the Restatement (Second) of Torts as well as on the Illinois Premises Liability Act (Act) (740 ILCS 130/1 
et seq.
 (West 1996)).  Plaintiff also contends that Rodolfo was an invitee to whom a duty was owed.  We will, therefore, first address whether a duty to protect a person from third-party criminal acts can exist absent a special relationship between a landowner or occupier and the injured person.

Plaintiff first asserts the existence of a duty of reasonable care under the Act.  See 740 ILCS 130/1 
et seq.
 (West 1996).  The Act "retraced the special but limited immunity from tort liability enjoyed by owners and occupiers of land with respect to licensees."  
Ward v. K mart Corp.
, 136 Ill. 2d 132, 141 (1990).  However, the Act "did not significantly alter the common law duty owed by an owner or occupier of premises to invitees thereon."  
Ward
, 136 Ill. 2d at 142.  The status of business invitee is still relevant to determining whether a landowner has a duty to protect another against criminal acts by third parties.  See 
Hills
, 195 Ill. 2d at 243-44 (2000).  
In 
Hills
, our supreme court distinguished between individuals whose presence on the land confers some benefit to the owner or occupier and individuals who enter land that is held open to the public for entry for business purposes.  
Hills
, 195 Ill. 2d at 248.  The court concluded that the latter conditions were necessary to establish a special relationship such that the owner or occupier had a duty to guard against criminal acts by third parties.  
Hills
, 195 Ill. 2d at 249-51.  Although the Act abolished the distinction between invitees and licensees for most purposes, in order to impose liability for the criminal act of a third person, 
all individuals must establish that the premises where the injury occurred were open to the general public for business purposes.  
Hills
, 195 Ill. 2d at 252.  
Because the Act did not significantly change duties owed to invitees (
Ward
, 136 Ill. 2d at 142), defendants owed plaintiff no duty under the Act absent a showing that defendants' premises were open to the general public for business purposes.  Accordingly, we conclude that the Act does not excuse plaintiff from establishing the existence of a special relationship before plaintiff can impose liability upon defendants.

Plaintiff next argues that a duty existed under section 318 of the Restatement (Second) of Torts.  This section provides as follows:

"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

(a) knows or has reason to know that he has the ability to control the third person, and

(b) knows or should know of the necessity and opportunity for exercising such control."  Restatement (Second) of Torts §318 (1965). 

Plaintiff asserts that this section has been adopted in Illinois and cites two cases in support.  See 
Cravens v. Inman
, 223 Ill. App. 3d 1059, 1076 (1991); 
Teter v. Clemens
, 112 Ill. 2d 252, 260 (1986).  However, it is unclear whether these cases represent the law in Illinois.  In 
Charles v. Seigfried
, 165 Ill. 2d 482, 501-02 (1995), our supreme court expressly declined to adopt the reasoning of the 
Cravens
 court.  More fundamentally, neither case cited by plaintiff involves liability for the criminal acts of a third party.  
Cravens
 involved a traffic accident.  
Cravens
, 223 Ill. App. 3d at 1076.  In 
Teter
, the court was considering whether the possession of a pellet gun by a minor, a five-year old, created an unreasonable risk of harm to others.  
Teter
, 112 Ill. 2d at 260.  Thus, both cases are distinguishable and provide no support for the proposition that section 318 in some way abrogates the rule that a special relationship must exist before an owner or occupier of land has a duty to guard against criminal acts of third parties.  Further, we note that in 
Zimring v. Wendrow
, 137 Ill. App. 3d 847, 852-53 (1985), this court considered the applicability of section 318 in a case involving a landowner's liability for the criminal act of a third party.  This court rejected the plaintiff's reliance on section 318 and instead applied the traditional rule that no duty exists absent a special relationship between the parties.  
Zimring
, 137 Ill. App. 3d at 852-53.  We need not, nor do we, express an opinion on whether section 318 represents the law in Illinois; however, we hold that section 318 does not modify the requirement that a special relationship must exist before a landowner or occupier has a duty to guard against the criminal acts of a third party.  See 
Zimring
, 137 Ill. App. 3d at 852-53.

Finally, plaintiff relies on section 314A of the Restatement (Second) of Torts in support of the proposition that defendants owed plaintiff's decedent a duty.  Section 314A states, in pertinent part, the following:

"(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

***

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation."  Restatement (Second) of Torts §314A (1965).

Plaintiff argues that, because there is evidence that the party was open to the public and that plaintiff's decedent entered in response to an invitation, a duty existed under section 314A.  However, the supreme court has recently clarified the scope of section 314A.  
Hills
, 195 Ill. 2d at 243-44.  Specifically, the supreme court has held that the special relationship set forth in subsection (3) of section 314A must be read in light of section 344 of the Restatement (Second) of Torts.  Section 344 provides as follows:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise protect them against it."  Restatement (Second) of Torts §344 (1965).

Thus, in Illinois, the relationship set forth in section 314A upon which plaintiff relies requires that the land be held open for business purposes and that the plaintiff's entry be connected to such a purpose.  
Hills
, 195 Ill. 2d at 250-52.  Section 314A does not alter the rule that in order to impose liability for the criminal act of a third party a special relationship must exist.  In fact, read with section 344, it merely reaffirms that a business invitee may impose liability on a business invitor under such circumstances.

Having considered and rejected plaintiff's arguments regarding the imposition of a duty in the absence of a special relationship between the parties, we now consider whether such a relationship existed between defendants and plaintiff's decedent.  We conclude that one did not.  As previously noted, the only special relationship conceivably applicable to the instant case is that of business invitor and invitee.  See 
Hills
, 195 Ill. 2d at 243-44.  This relationship may arise where the owner or occupier of land holds the land open to the public for business purposes.  
Hills
, 195 Ill. 2d at 250-51.  Plaintiff contends that evidence supports the existence of such a relationship.  Plaintiff points out the plaintiff's decedent paid a $3 fee to enter the party.  The payment of this fee entitled him to drink beer and to enjoy the music provided by the disk jockey.  Further, plaintiff's decedent, a minor, was free to drink beer without intervention by the police.  Plaintiff also asserts that between 50 and 70 individuals attended the party, and each payed $3.  According to plaintiff, these facts support an inference that plaintiff's decedent was a business invitee.

While we do not condone the events surrounding Rodolfo's death but do lament the tragedy that occurred, we find plaintiff's attempt to equate Judith's party with a business enterprise unpersuasive.  Authority is scant regarding whether charging a fee to partygoers is sufficient to establish an invitor-invitee relationship; however, the authority cited by defendants and the authority we have located do not support plaintiff's position.  The only Illinois case we have located involves an interpretation of the Dramshop Act (see Ill. Rev Stat. 1981, ch. 43, par. 135 (now codified, as amended, at 235 ILCS 5/6--21 (West 1998))).  In that case, the court declined to extend liability under the Dramshop Act to an individual who held a party at his parents' home and collected money to pay for the liquor served.  
Heldt v. Brei
, 118 Ill. App. 3d 798, 799-800 (1983).  The court held that the mere fact that the defendant collected money at the party was insufficient to establish that he was in the business of selling liquor for profit as required by the Dramshop Act.  
Heldt
, 118 Ill. App. 3d at 800.  Although the 
Heldt
 court had before it the question of whether a fee charged at a party established that the defendant was in the business of selling liquor while the issue in the present case is whether a business invitor-invitee relationship existed between the parties, 
Heldt
 provides some guidance.  In 
Heldt
, the defendants' status as social hosts was unaffected by the imposition of a small fee.  
Heldt
, 118 Ill. App. 3d at 800.  We see no reason why a similar fee should change the relationship between the parties in the present case.  See also 
Koehnen v. Dufuor
, 590 N.W.2d 107, 112-13 (Minn. 1999) (holding the defendant did not forfeit protection of Minnesota's dramshop act, under which social hosts are immune, by charging her guests a $2 to $4 fee to attend a party).

Defendants call our attention to 
Childress v. Sams
, 736 S.W.2d 48 (Mo. 1987), a Missouri case that considered a similar question.  In that case, three individuals split the purchase price of a quantity of beer that was to be served at a party.  At the party, they collected a cover charge of $2 from each female guest and $3 from each male guest.  The amount collected exceeded the cost of the beer by between $5 and $8.  Under Missouri law, no cause of action lies against a social host arising from the provision of alcohol to others.  
Childress
, 736 S.W.2d at 49.  The court found that the fee merely represented an attempt to defray expenses and that no commercial motive was evident.  
Childress
, 736 S.W.2d at 50.  Accordingly, the court held that the defendants were social hosts and immune from liability despite the fact that they charged a fee at their party.  
Childress
, 736 S.W.2d at 50; see also 
Ernst v. Dowdy
, 739 S.W.2d 571, 572 (Mo. App. 1987).

In 
Kuehn v. Edward Rose & Sons
, 189 Mich. App. 288, 472 N.W.2d 59 (1991), the defendant owned and operated an apartment complex.  Weekly parties were held for the tenants every Friday night.  A $3 admission fee was charged to cover the cost of snacks, beverages, and a disk jockey.  The plaintiff was injured when the defendant, another partygoer, drove his van into a crowd of people in the parking lot.  After rejecting a claim based on Michigan's dramshop act, the court considered the plaintiff's common-law negligence claim and held that "liability for negligently furnishing alcohol does not extend to social hosts who serve alcohol to adults who subsequently injure third parties."  
Kuehn
, 189 Mich. App. at 290, 472 N.W.2d at 60.  Once again, as in the previously discussed cases, the court held that the defendant was a social host despite the fact that the host charged a fee to attend the party.

While the ultimate issues considered by these cases differ from that confronting this court, they stand for a common proposition relevant to the resolution of the instant case.  All hold that the imposition of a small fee to people attending a party does not alter the relationship between the host and the guests.  We, too, conclude that the collection of a small fee, by someone who, absent the fee, would otherwise clearly not be a business invitor, is insufficient to establish the special relationship of business invitor and invitee that would allow the imposition of liability for the criminal acts of third parties.  To establish  the relationship of business invitor-invitee sufficient to impose a duty to guard against the criminal acts of third parties, the premises involved must be "a business open to the general public."  
Hills
, 195 Ill. 2d at 251.  That defendants charged a fee to guests attending what would otherwise clearly be a social gathering is insufficient to establish this relationship.

Before concluding, three additional points raised by plaintiff need to be addressed.  First, plaintiff repeatedly asserts that between 50 and 70 people attended the party and paid the fee.  Plaintiff states that this resulted in defendants collecting between $150 and $210.  Initially, we note that this statement ignores the uncontradicted testimony of five guests who said that they were not charged a fee.  In his brief, plaintiff points to no evidence of the amount expended by Judith in preparation for the party, making speculative any assertions that a profit was made.  Moreover, we decline to make the mere fortuity of the number of people who ultimately chose to attend the basis of a duty.  In 
Childress
, the amount collected exceeded the cost of the beer by between $5 and $8.  
Childress
, 736 S.W.2d at 49.  Had a different number of people attended, this figure would have changed; however, the nature of the relationship between the parties would have remained essentially the same.  No reason exists to ascribe legal significance to such a change.  Furthermore, such a rule would put a person holding a party in the position of not knowing whether he or she was a social host or a business invitor until the number of people who decided to attend was known.  Such a person would not know whether he or she had a duty to do things like hire security or purchase insurance until it was too late to do so.  The result would be an unworkable rule.

Second, plaintiff attempts to create a question of fact, relying on several denials made by defendants in their depositions.  Without citation to the record, plaintiff asserts that defendants denied a fee was charged or that a keg of beer was present in the apartment.  By failing to cite the record, plaintiff has waived this issue.  
People v. Acevedo
, 191 Ill. App. 3d 364, 366 (1989).  Further, plaintiff's argument is flawed.  Plaintiff essentially asks us to construe the record in his favor and find that alcohol was present and a fee was charged and then construe the record in his favor and conclude that no alcohol was present and the fee was not used to defray the cost of the party.  In 
Gold Standard Enterprises, Inc. v. United Investors Management Co.
, 182 Ill. App. 3d 840, 846 (1989), the court noted that, while "a trial court should construe the facts liberally in favor of the nonmovant in considering a motion for summary judgment, the court need not strain to adduce some remote factual possibility that will defeat the motion."  Here, plaintiff asks us to do more than strain to adduce a factual possibility; he asks us to base our decision on a contradiction.  We note that, if we were to construe the record in accordance with the denials plaintiff relies on in this argument, the facts upon which plaintiff relies in his attempt to establish a business invitor-invitee relationship--that defendant was selling alcohol and profiting--would no longer be available, and the outcome of the case would be no different.

Finally, plaintiff repeatedly calls our attention to the fact that minors were consuming alcohol at the party and that this activity is illegal.  Plaintiff also points out the crowded and unlighted setting in which the party took place.  While these facts might have some relevance to the issue of foreseeability (see 
Loomis v. Granny's Rocker Nite Club
, 250 Ill. App. 3d 753, 758-59 (1993)), they have no bearing on whether defendants and plaintiff's decedent stood in the relationship of business invitors and invitee.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

HUTCHINSON, P.J., and RAPP, J., concur.