2025 IL App (2d) 240138
No. 2-24-0138
Opinion filed November 14, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LATASHA McKELVY, as Special Administrator of the Estate of SHAFT WILSON JR., Deceased, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-L-540 |
| JOANNE MENZIES, Individually and as Trustee of Parcel ID: 1607301027 Commonly Known as 1359 West Estate Lane East, Lake Forest, Illinois, and KATHERINE MENZIES, | ) ) ) ) ) ) | Honorable Jorge L. Ortiz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Latasha McKelvy, as special administrator of the estate of her son, Shaft Wilson, Jr., filed a complaint in the circuit court of Lake County seeking damages from defendants Joanne and Katherine Menzies as a result of Shaft's death. Shaft was shot and killed by a stray bullet during a party at a house owned by Joanne and where Katherine (who was in her late 20s) was living. The trial court granted defendants' motion to dismiss plaintiff's complaint. Plaintiff appeals from that order. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      The following facts are taken from plaintiff's fifth amended complaint (complaint). On October 28 to 29, 2017, Katherine hosted a Halloween party at 1359 West Estate Lane East in Lake Forest. (The house was owned by Joanne.) Katherine allowed her boyfriend to advertise the party on Facebook and charge a $15 admission fee. The advertisement indicated that Katherine's boyfriend and his fellow gang members would be "SEARCHING AT DOOR" and that they were "ARMED And DANGEROUS." Katherine knew her boyfriend wanted partygoers to be checked for weapons prior to entering the premises because gunshots had been fired at a party they had attended together two weeks prior. Over 200 people attended Katherine's party. One of those people was Shaft, who was shot and killed.

¶ 4      The complaint alleged that Katherine knew or reasonably should have known that violence would break out at the party as a result of her boyfriend and his fellow gang members carrying illegal guns at the party. The complaint alleged that Katherine owed a duty of care to Shaft and that Joanne owed that same duty through her "agents in possession of the residence." The complaint further alleged that defendants breached that duty by (1) providing inadequate security at the event, (2) permitting persons who were armed and dangerous to attend the event, (3) failing to intervene and protect invitees when a dispute arose between guests who were intoxicated and/or armed, (4) serving intoxicated guests and minors liquor when defendants knew or should have known they were carrying loaded guns and had made death threats, (5) allowing horseplay to occur on the property with intoxicated guests with loaded guns who became violent, and (6) failing to have the police break up the party when they were present outside the premises. As a proximate result of defendants' breach of their duty, Shaft was killed by gunfire. The plaintiff therefore sought damages in excess of $50,000.

¶ 5     In response, Joanne filed a motion pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)), seeking to dismiss the complaint. The section 2-615 (*id.* § 2-615) portion of the motion argued that Joanne owed no duty to Shaft because his death by gunfire was not foreseeable. The section 2-619 (*id.* § 2-619) portion of the motion argued that Joanne owed no duty of care to Shaft because she did not possess or occupy the property at issue and had no knowledge about the party that occurred there. In support of this argument, she relied on her affidavit and deposition testimony.

¶ 6     Katherine filed a section 2-615 motion to dismiss the complaint. Like Joanne, she argued that she owed no duty to Shaft because his death from gunfire was unforeseeable.

¶ 7     On December 6, 2023, plaintiff filed a motion to strike the briefing schedule on Joanne's section 2-619.1 motion. Plaintiff argued that she could not respond to the section 2-619 portion of Joanne's motion until she had taken Katherine's deposition.

¶ 8     On December 12, 2023, the trial court ordered that plaintiff would have two days to respond to the section 2-615 argument in Joanne's motion to dismiss. The trial court indicated that it would then conduct a hearing on only the section 2-615 portion of the motion to dismiss.

¶ 9     On January 16, 2024, following a hearing, the trial court granted both Joanne and Katherine's section 2-615 motions to dismiss the complaint with prejudice.[1] The trial court explained that neither Joanne nor Katherine owed a duty to Shaft because his death by gunfire was not foreseeable.

---

[1]The trial court had previously dismissed plaintiff's first and third amended complaints without prejudice. The trial court dismissed the first amended complaint as it found that the standard of ordinary care did not apply to the case. The trial court dismissed the third amended complaint because plaintiff had not alleged facts indicating that the shooting was reasonably foreseeable.

¶ 10    Following the trial court's ruling, plaintiff filed a timely notice of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, plaintiff argues that the trial court erred in finding that defendants did not owe a duty to Shaft and, therefore, dismissing the complaint with prejudice.[2] Plaintiff argues that defendants owed a duty of care to Shaft based on their special relationship to him; he was defendants' business invitee. Alternatively, plaintiff argues that defendants voluntarily assumed a duty of care for Shaft by providing security at the party.

¶ 13    A motion to dismiss under section 2-615 of the Code challenges a complaint's legal sufficiency based on defects apparent on the face of the complaint. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47. In ruling on a section 2-615 motion to dismiss, the court must accept all well-pleaded facts, as well as any reasonable inferences to be drawn therefrom, as true. *Id.* As a result, a defendant may properly raise an affirmative defense in a section 2-615 motion if the defense is apparent from the face of the complaint. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 18. The court can also consider judicial admissions in the record and matters of which the court is entitled to take judicial notice. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). We review a trial court's decision on a section 2-615 motion to dismiss *de novo*. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25.

¶ 14    A negligence claim requires "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). Questions regarding breach of a duty and

---

[2]We will refer to Joanne and Katherine collectively as "defendants" since Joanne's liability is premised on Katherine's liability. If the allegations do not establish that Katherine owed a duty of care to Shaft, then we must necessarily determine that Joanne did not owe Shaft a duty either.

proximate cause of the injury are issues of fact reserved for the trier of fact to decide. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226 (2010). Whether a duty exists is a question of law. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13. Thus, we review *de novo* a trial court's determination regarding whether a defendant owed a duty. See *Krywin*, 238 Ill. 2d at 226. Where no duty exists, the plaintiff cannot recover as a matter of law. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22.

¶ 15    As a general rule, Illinois does not impose a duty to protect others from criminal acts by third persons. *Jackson v. Shell Oil Co.*, 272 Ill. App. 3d 542, 547 (1995). However, there is an exception to this rule consisting of two elements: first, there must be a special relationship between the parties, and second, the criminal act must have been reasonably foreseeable. *Id.* It is incumbent upon a party asserting a negligence claim to establish both elements. *Id.*

¶ 16    As to the first element, one such special relationship is that of a business invitor and invitee. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 243-44 (2000). A reason for recognizing this relationship as a special relationship is that, generally, "commercial establishments are well positioned 'to know the extent of crime on the premises [and] to take measures to thwart it and to distribute the costs' associated with providing security." *Id.* at 245 (quoting *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 903 (Tenn. 1996)).

¶ 17    Defendants argue that the only relationship between Katherine and Shaft was that of social host and guest, which is not the type of special relationship that imposes a duty upon Katherine for Shaft's care.[3] We agree. The complaint alleges that the party was occurring at a home—not at a

---

[3]Joanne insists that she had no relationship whatsoever to Shaft that would impose a duty on her as she had no control over the property nor knowledge that a party was occurring there. See, *e.g.*, *Jackson*, 272 Ill. App. 3d at 548-49 ("simple relationship between a landlord and tenant, and a landlord and those on

commercial establishment, such as a bar or tavern. Thus, unlike a bar or tavern, defendants were not well positioned to " 'know the extent of crime on the premises [and] to take measures to thwart it.' " *Hills*, 195 Ill. 2d at 245 (quoting *McClung*, 937 S.W.2d at 903).

¶ 18    Plaintiff insists that defendants were acting like a commercial establishment because they (1) advertised the party to the general public through Facebook and (2) charged a $15 admission fee. First, an invitation on Facebook does not constitute an invitation to the general public. See *Jackson v. Sigma Pi Fraternity International Inc.*, No. 5:11-CV-00024, 2013 WL 3562086, at *6 (W.D. Ky. July 11, 2013).[4] In *Jackson*, the plaintiff filed a complaint alleging that his rights were violated when he was kicked out of a fraternity party. Specifically, he asserted that because the fraternity party was advertised as an open event on Facebook, the party was open to the public and therefore subject to the public-accommodation provision of the Kentucky Human Rights Act (Ky.

---

the premises with the tenant's consent, is not a special relationship that might give rise to a duty to protect against the criminal acts of others"). In support of this argument, she points to her affidavit and deposition, which she claims constitutes a judicial admission because her testimony therein is uncontradicted.

Joanne's testimony does not constitute a judicial admission because it is not adverse to her defense. *Hansen v. Ruby Construction Co.*, 164 Ill. App. 3d 884, 888 (1987). Although she cannot use that testimony in support of a section 2-615 motion to dismiss, she could use such testimony in support of a section 2-619 motion to dismiss the complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485 (1994). Such a motion is not before our review, however, as the trial court stated it was only considering the section 2-615 portion of Joanne's motion to dismiss.

[4]Although decisions of foreign courts are not binding, the use of those decisions as persuasive authority is appropriate where Illinois authority on point is lacking. *Draper & Kramer, Inc. v. King*, 2014 IL App (1st) 132073, ¶ 31.

Rev. Stat. Ann. § 344.120 (West 2010)). The district court rejected that argument, finding that "the party was not open to the public because it was only available to those who possessed a Facebook account." *Jackson*, 2013 WL 3562086, at *6. The district court expounded that "a Facebook invitation's status as an 'open event' does not somehow transform it into one 'open to the general public.' " *Id.* The district court reiterated that the invitation to "the event [was] still limited in distribution to registered Facebook users." *Id.*

¶ 19    Second, the charging of a fee does not transform a house party into a business endeavor. See *Elizondo v. Ramirez*, 324 Ill. App. 3d 67, 75 (2001). In *Elizondo*, the parents of a 15-year-old girl allowed the girl to have a party at which she provided alcohol to her underage friends. Between 50 and 70 people attended the party. A $3 admission fee was charged to attend the party, although not everyone paid that fee. At the entrance, a sign was posted that stated, "no gang colors." One of those attending the party was Rodolfo, a member of the Latin Kings gang. Rodolfo was involved in an altercation at the party and was subsequently shot and killed. His estate brought a wrongful death and survival action against the defendants, alleging negligence. The trial court granted the defendants' motion for summary judgment, finding that no special relationship existed between the defendants and Rodolfo such that they owed him a duty to protect him from the criminal acts of third parties. *Id.* at 69-71.

¶ 20    On appeal, this court affirmed. *Id.* at 78. We rejected the plaintiff's argument that there was a business invitor and invitee relationship between the defendants and Rodolfo because the defendants charged a $3 fee to attend. *Id.* at 75. We determined that the imposition of a small fee did not change the defendants' status as social hosts, which is not a type of relationship that would impose a duty on the defendants to the benefit of the plaintiff. *Id.* at 76 (social hosts were immune from liability despite the fact that they charged a fee at their party because fee merely represented

an attempt to defray expenses and that no commercial motive was evident (citing *Childress v. Sams*, 736 S.W.2d 48, 50 (Mo. 1987))).

¶ 21    Here, the complaint alleges that defendants charged a $15 admission fee and served guests and minors alcohol to the point that some of the guests were intoxicated. A reasonable inference from these allegations was that the admission fee helped defray the expense of the alcohol, and, thus, the party. See *id.*; *Childress*, 736 S.W.2d at 50. As such, the allegations do not establish that the parties were in a business relationship that would impose a duty on defendants to protect Shaft from the criminal acts of others. See *Jackson*, 272 Ill. App. 3d at 547.

¶ 22    Moreover, even if we were to construe plaintiff's allegations as sufficiently pleading a special relationship between defendants and Shaft, plaintiff has still failed to sufficiently plead that defendants could have reasonably foreseen the criminal acts at issue. To be reasonably foreseeable, the conduct must be "objectively reasonable to expect, not merely what might conceivably occur." (Internal quotation marks omitted.) *Benner v. Bell*, 236 Ill. App. 3d 761, 766 (1992). General assertions of crime are not enough to establish foreseeability. *Salazar v. Crown Enterprises, Inc.*, 328 Ill. App. 3d 735, 745 (2002).[5] This is because "anyone can foresee the commission of a crime virtually anywhere at any time." (Internal quotation marks omitted.) *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 147 (2000). It is " 'the general character of the event or harm' " that must be reasonably foreseeable before a duty may be imposed, " 'not its precise nature or manner of occurrence.' " *Marshall*, 222 Ill. 2d at 442 (quoting *Bigbee v. Pacific Telephone & Telegraph*

___

[5]Plaintiff argues that she pled in the alternative that Shaft's death was proximately caused through (1) a criminal attack and/or (2) through a misuse of firearms. Under either theory, our analysis would be the same: the shooter's actions either constituted first degree murder (720 ILCS 5/9-1 (West 2016)) or involuntary manslaughter (*id.* § 9-3) and were thus criminal.

*Co.*, 665 P.2d 947, 952 (Cal. 1983)); see *Slager v. Commonwealth Edison Co.*, 230 Ill. App. 3d 894, 904 (1992) (explaining that "the precise pattern of events" need not be foreseeable before a duty may be found). Moreover, foreseeability is not based on a magic formula, nor is it assessed without regard to common sense. *Slager*, 230 Ill. App. 3d at 904.

¶ 23    Illinois courts have looked to the Restatement of Torts for guidance in determining the circumstances in which a business has a duty to protect its patrons from a third party's criminal or careless acts. *Id.* Section 344 of the Restatement (Second) of Torts provides, in pertinent part:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." Restatement (Second) of Torts § 344, at 223-24 (1965).

¶ 24    While section 344 may be read to impose a broad duty on landowners, comment f further explains when this duty arises:

"f. Duty to police premises. Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor,

even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." Restatement (Second) of Torts § 344 cmt. f (1965).

See *Hills*, 195 Ill. 2d at 246 (considering section 344 in determining whether alleged acts were foreseeable to a business owner); *Sameer v. Butt*, 343 Ill. App. 3d 78, 86-89 (2003) (same).

¶ 25    As foreseeability is measured by the individual facts and circumstances of each case (*Osborne*, 312 Ill. App. 3d at 147), we look at the facts that are alleged here. We first note that although plaintiff makes numerous references to the gang presence at the party, she does not allege that a gang member shot Shaft. Indeed, plaintiff does not identify Shaft's shooter at all. Second, the complaint only makes two allegations mentioning the shooting: (1) Shaft "was shot and killed by a stray bullet from one of the party guests" and (2) defendants allowed "horseplay to occur on the property with intoxicated guests with loaded guns who became violent, which led to the discharge of a gun, causing Decedent to be shot." These allegations do not specify what part of the property the alleged horseplay occurred in or where on the property Shaft was shot. As such, as the complaint neither identifies the shooter nor specifies where the events at the house party leading to the shooting occurred, plaintiff essentially seeks to impose a duty on defendants to know what all 200 guests at the party were doing at all times while on every inch of the property. The law does not impose a duty on a party host to be omnipresent or omniscient.

¶ 26    We note that the facts alleged here are significantly different than cases where a reviewing court has found that a plaintiff has sufficiently pled that a business invitor had a duty to protect its

invitees from harm from a third person. See *Shortall v. Hawkeye's Bar & Grill*, 283 Ill. App. 3d 439, 444-45 (1996), *Osborne*, 312 Ill. App. 3d at 149, *Haupt v. Sharkey*, 358 Ill. App. 3d 212, 219-20 (2005), and *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 72.

¶ 27    In *Shortall*, the reviewing court determined that the defendant tavern owner had a duty to protect the plaintiff from injuries sustained in a fight that took place immediately outside the tavern. In so ruling, this court specifically noted that the tavern owner contributed to and escalated the altercation by sending patrons outside after the dispute began in the bar. In addition, the court observed that the brawl occurred just outside the front door and continued for 15 minutes while the owner's employee watched through a window. No one called the police, and none of the bouncers attempted to stop the fight. *Shortall*, 283 Ill. App. 3d at 444-45.

¶ 28    In *Osborne*, the defendant's bouncers had set up barricades on the sidewalk to control the crowd lining up to get into the bar. Eight or nine of the defendant's bouncers got into an altercation with the assailant and his friend. After a lengthy fight, the bouncers forced the two intoxicated men outside the tavern. The expelled patrons tried to get back into the bar by pounding on the door. The bouncers locked the door and ignored them. After the plaintiff left the bar through the locked door, one of the expelled patrons felt a push behind him. Thinking it was the bouncers, he " 'did a spinning heel kick' " and struck the plaintiff. *Osborne*, 312 Ill. App. 3d at 144. In reversing the trial court's directed verdict for the defendant, the appellate court reasoned that the defendant, knowing the expelled patrons were intoxicated, combative, and angry, "exported" the problem out to the sidewalk. The court held that, based on the bouncers' knowledge, it was reasonably foreseeable that allowing patrons to leave through the locked door into the path of the potentially dangerous men would lead to the patrons being attacked. *Id.* at 149.

¶ 29    In *Haupt*, the appellate court reversed summary judgment for a tavern owner, finding that a tavern could be liable for a criminal attack against one of its patrons that occurred just outside the tavern's property in a parking area. The tavern owner knew that the attacker had a propensity for fighting, saw the attacker start a fight with the plaintiff inside the tavern, and then kicked both men out at the same time. *Haupt*, 358 Ill. App. 3d at 219-20. The court held that a tavern's duty "to provide a reasonably safe means of ingress and egress to patrons" and the foreseeability of the criminal attack that occurred as the patron was evicted from the tavern precluded summary judgment in the tavern's favor. *Id.* at 219-20.

¶ 30    In *Cooke*, this court found that the trial court had "properly determined that [the nightclub] owed plaintiffs a duty to protect plaintiffs" from the criminal attack of another patron. *Cooke*, 2018 IL App (2d) 170249, ¶ 77. The nightclub argued that the criminal attack was not reasonably foreseeable because "prior to the attack [the attacker] had not been involved in a fight or threatened anyone and [the nightclub] had no history of fights on its premises that put it on notice of any danger to plaintiffs while they were on the premises." *Id*. ¶ 71. We found, however, that the nightclub had knowledge, through its employees, "that [the attacker] was angry that night." *Id.* ¶ 72. The attacker had been arguing with other patrons, had been shouting obscenities, and had "grabbed [the plaintiff] outside [the nightclub's] front entrance." *Id.* Additionally, the plaintiff and his friend "had asked one of the bouncers for help dealing with" the attacker. *Id.* The attacker had been removed from the "premises for bad behavior" but the nightclub employees allowed him to leave in the same direction as the plaintiff and his friend, "about one minute after they left." *Id.* We found that, "[g]iven these facts and the bouncers' inaction, [the attacker's] criminal attack was reasonably foreseeable to [the nightclub]." *Id.*

¶ 31    Unlike the cases discussed above, the complaint here does not allege that the putative business owners (defendants) had any knowledge that someone might harm one of their guests (Shaft) or that defendants knew that there was horseplay going on with loaded weapons. Further, the complaint does not allege that defendants had hosted parties before where the circumstances put them on notice that criminal acts would occur at their party. This is markedly different from *Shortall, Osborn, Haupt*, and *Cooke* where nothing in those cases suggests the defendants had just started operating a night club or tavern and the allegations were that the defendants had knowledge of recent aggressive behavior by its patrons, for which the patrons were ejected from the premises.

¶ 32    Although plaintiff alleges that Katherine had attended a party two weeks prior in which gunshots had been fired, that did not constitute notice that shots would also be fired at the party she hosted. Further, we note the general nature of the allegations as they do not indicate such important details as where the other party occurred or whether the shooting at that party was intentional or the result of careless horseplay. "[G]eneralized allegations of crime will not suffice to establish that future criminal attacks are foreseeable." *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 93 (1992); see *Petrauskas v. Wexenthaller Realty Management, Inc.*, 186 Ill. App. 3d 820, 824, 829 (1989) (allegations that building in "high crime area" and that another person had been shot "across the street" insufficient to make criminal attack foreseeable). Accordingly, the allegations in the complaint do not set forth how defendants could have foreseen that a party guest would shoot Shaft. As such, defendants also did not owe a duty to Shaft on this basis.

¶ 33    We next consider whether defendants voluntarily assumed a duty of care for Shaft when they advertised that they would be checking people for weapons before entering the premises. Defendants argued below that plaintiff forfeited this issue by not properly pleading it in the complaint. The trial court found that the issue was likely forfeited but addressed it anyway and

determined that defendants had not voluntarily assumed a duty of care for Shaft. On appeal, defendants again argue that plaintiff has forfeited this issue. We agree. Indeed, nowhere in the complaint does plaintiff even use the term "voluntary." If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint (*Filliung v. Adams*, 387 Ill. App. 3d 40, 51 (2008)) as "proof without pleading is as defective as a pleading without proof" (*In re Detention of Hayes*, 2014 IL App (1st) 120364, ¶ 30). Nonetheless, as both the parties have addressed the issue, and because forfeiture is a limitation on the parties and not this court (*Monroy-Perez v. Sentry Select Insurance Co.*, 2025 IL App (1st) 241711, ¶ 31), we will consider the issue.

¶ 34    "The essential element of the voluntary[-]undertaking doctrine is an undertaking, and the duty of care imposed on a defendant is limited to the extent of his undertaking." *Iseberg v. Gross*, 366 Ill. App. 3d 857, 865 (2006); see also *Bell v. Hutsell*, 2011 IL 110724, ¶ 12 (the duty of care "is limited to the extent of the undertaking"). Further, the extent of the undertaking is determined by a reasonable assessment of its underlying purpose. See *Bourgonje v. Machev*, 362 Ill. App. 3d 984, 1002 (2005). "The theory is narrowly construed." *Bell*, 2011 IL 110724, ¶ 12. For example, a landlord's provision of exterior lighting, absent evidence that it was provided for a specific security purpose, is not a voluntary undertaking to protect tenants from criminal acts. Such lighting may be provided simply for convenience. See *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 218-19 (1988). A promise to maintain door locks is also not an assumption of a duty to protect tenants from the criminal acts of third parties. *Sanchez v. Wilmette Real Estate & Management Co.*, 404 Ill. App. 3d 54, 63 (2010). Because one may abandon his desire to voluntarily provide another service, courts look to what affirmative actions one took in furtherance of his stated duty

in order "to ascertain the scope of the duty plaintiff may reasonably claim defendants intended to undertake." *Bell*, 2011 IL 110724, ¶ 25.

¶ 35    In *Bell*, the plaintiff asserted that the defendants allowed their son to host a party. The plaintiff alleged that the defendants voluntarily undertook a duty to prohibit underage drinking at the party. As a result of a breach of that duty, the plaintiff alleged that her son drank alcohol and later crashed his car into a tree and died. *Id.* ¶¶ 3-4. The supreme court rejected the plaintiff's argument that the defendants had voluntarily assumed a duty of care, explaining:

> "[F]or there to be a substantial step in pursuit of the alleged undertaking, there must have been some affirmative action taken in an attempt to prohibit possession and consumption of alcohol, the ultimate objective of the undertaking. No affirmative action is alleged here. Defendants did not attempt to confiscate alcoholic beverages in the possession of underage partygoers; they did not ask offenders to leave; they did not call a halt to the party—they did nothing. In our view, the facts alleged do not support an inference that defendants commenced substantive performance of their intended undertaking; however, even if we were to assume, *arguendo*, such an inference could be reasonably drawn, the alleged circumstances indicate the intent to perform was abandoned." (Emphasis omitted.) *Id.* ¶ 26.

¶ 36    Here, plaintiff's argument that defendants assumed a duty of care on Shaft's behalf fails for three reasons. First, plaintiff's allegations do not indicate that defendants assumed a duty to prevent party guests from bringing weapons onto the property. In the complaint, plaintiff alleged that defendants advertised that the organizers of the party would be "SEARCHING AT DOOR" and that they were "ARMED And DANGEROUS." The complaint further alleged that defendants wanted partygoers/invitees to be checked for weapons prior to entering the premises. Conspicuously absent from the complaint, however, is any allegation of what would happen if

defendants discovered someone was trying to bring a gun into the party. Checking for weapons alone does nothing to ensure that those weapons will be kept out of the party. As we must construe an alleged voluntary undertaking narrowly (*id.* ¶ 12), defendants' alleged intention to search and check for weapons is not equivalent to an attempt to actually keep such weapons out of the party.

¶ 37    Second, even if we were to interpret defendants' advertisement to "search" for weapons as a voluntary undertaking to stop all weapons from entering the party, defendants took no affirmative actions to effectuate that goal. Although plaintiff alleges that party guests brought weapons to the party and engaged in horseplay with them, there is no allegation that defendants ever attempted to confiscate any weapon. There is no allegation that defendants denied entry to anyone with a weapon or asked anyone with a weapon to leave. They did not attempt to halt the party when people started using weapons for horseplay. And, as plaintiff alleges, defendants did not have the police intervene even after they knew people with loaded guns were at the party. In sum, based on the facts alleged, defendants did nothing to prevent party guests from having guns at the property.

¶ 38    Third, even if defendants did desire to keep guns out of the party, the alleged circumstances indicate that intent to perform was abandoned. *Id.* ¶ 26. For all these reasons, defendants did not voluntarily assume a duty of care for Shaft.

¶ 39    Finally, although plaintiff requests the opportunity to file a sixth amended complaint and be allowed to complete more discovery, she does not indicate how that would enable her to make any more material allegations that defendants owed her a duty. We are sympathetic to plaintiff's desire to hold someone accountable for Shaft's wrongful death. However, imposing liability on someone for another's careless or criminal actions is limited to rare cases. See *Salazar*, 328 Ill. App. 3d at 745 (Illinois law is very limited in imposing a duty upon a landowner to protect individuals from criminal attacks by third parties); see also *Scott v. Wendy's Properties, LLC*, 131

F.4th 815, 823 (7th Cir. 2025) (Illinois precedent provides that unprovoked, extreme acts of violence are usually unpredictable as a matter of law). Based on the facts alleged here, the complaint does not establish that this is a rare case where defendants should be held responsible for someone else's criminal or careless acts.

¶ 40                                    III. CONCLUSION

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court of Lake County.

¶ 42    Affirmed.

*McKelvy v. Menzies*, **2025 IL App (2d) 240138**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 19-L-540; the Hon. Jorge L. Ortiz, Judge, presiding. |
| **Attorneys for Appellant:** | Kevin W. O'Connor, of O'Connor Law Firm, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Rachel D. Kiley and Logan N. Giaquinta, of Connolly Krause, LLC, of Chicago, for appellee Joanne Menzies.<br><br>Thomas C. Cronin and Leland W. Hutchinson, of Cronin & Company, Ltd., of Chicago, for other appellee. |